# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

LAURIE EXBY-STOLLEY,
    Plaintiff – Appellant,

v.

                            Case No. 16-1412

BOARD OF COUNTY COMMISSIONERS
WELD COUNTY, COLORADO,
    Defendant – Appellee.

---

## OPENING BRIEF OF PLAINTIFF-APPELLANT

---

## APPELLANT REQUESTS ORAL ARGUMENT

Bruce G. Smith
Jason B. Wesoky
DARLING MILLIGAN HOROWITZ PC
1331 17th Street, Suite 800
Denver, CO 80202
Phone:       (303) 623-9133
Fax:          (303) 623-9129
Email:       bsmith@dmhlaw.net
              jwesoky@dmhlaw.net

*Attorneys for Plaintiff-Appellant*

I.     PRIOR OR RELATED APPEALS.................................................1

II.    STATEMENT OF APPELLATE JURISDICTION ....................................1

III.   ISSUES PRESENTED FOR REVIEW .....................................1

IV.   STATEMENT OF THE CASE ...........................................2

   A.    Nature of the Case ...................................................... 2

   B.    Procedural History ...................................................... 4

V.     STATEMENT OF FACTS ...........................................13

VI.   SUMMARY OF THE ARGUMENT ........................................19

VII.  ARGUMENT.................................................................21

   A.    The District Court Erred in Instructing the Jury it Must Find an Adverse Employment Action on Ms. Exby's Failure to Accommodate Claim and Misallocating the Burden for Defendant's Undue Hardship Defense................................................................... 21

       1.    Standard of Review .............................................21

       2.    Issue Raised and Ruled Upon...............................22

       3.    Discharge or Adverse Employment Action is Not an Element of a Failure to Accommodate Claim ..........................................23

       4.    Despite Ms. Exby Providing the District Court with the Applicable Law, the Court Rejected Tenth Circuit law and Erroneously Instructed the Jury it Must Find an Adverse Employment Action ......................27

       5.    The District Court's Erroneous Instruction on Failure to Accommodate Affected the Outcome of the Claim..........................32

       6.    Undue Hardship is an Affirmative Defense Defendant Never Alleged, and the District Court Erroneously Allocated the Burden of Proof on it to Plaintiff.....................................................33

   B.    The District Court Erred in Failing to Instruct the Jury on

**Constructive Discharge and Precluding Ms. Exby from Mentioning it at Trial** ..................................................................................... **36**

1.     Standard of Review ............................................................. 37

2.     Issue Raised and Ruled Upon .............................................. 38

3.     Constructive Discharge is Not a Stand-Alone Claim but is a Form of Adverse Employment Action; No Magic Words are Required ......... 38

4.     Plaintiff Sufficiently Raised Constructive Discharge as Part of Her Discrimination Claim, But the District Court Improperly Precluded Her From Presenting It ....................................................... 40

5.     The District Court's Refusal of a Constructive Discharge Instruction Precluded Plaintiff from Showing an Adverse Employment Action for her Failure to Accommodate Claim .................................................. 41

6.     The District Court's Dismissal of Plaintiff's Discrimination Claim on a Constructive Discharge Theory and Refusal of a Constructive Discharge Instruction Were Not Harmless ........................................ 42

**VIII. CONCLUSION** ........................................................................ **43**

**REQUEST FOR ORAL ARGUMENT** ............................................. **44**

# TABLE OF AUTHORITIES

**Cases**

*Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 830 n.2 (10th Cir. 2011) ... 10, 24, 29

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................. 40

*Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1253 (10th Cir. 2003) ................................................................. 37

*Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912 n.4 (10th Cir. 2004) .............. 24

*Bell Atlantic Corp. v. Twombly, 550 U.S. 544*, 554-55 (2007) ................................ 39

*Bright v. Hill's Pet Nutrition, Inc.*, 342 F. App'x 208, 209 (7th Cir. 2009)(unpublished) ................................................................. 39

*Bristol v. Bd. of Cty. Comm'rs of Clear Creek*, 281 F.3d 1148, 1164 (10th Cir. 2002) ................................................................. 24

*Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015) (unpublished) ................................................................. 26

*ClearOne Communications, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1171 (10th Cir. 2011) ................................................................. 37

*Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503-04 (3d Cir. 2010) ............................ 26

*Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 224 (7th Cir. 2015) ................... 26

*Drozdowski v. Northland Lincol Mercury*, 321 F. App'x 181, 184 (3d Cir. 2009) (unpublished) ................................................................. 26

*EEOC v. AutoZone, Inc.*, 630 F.3d 635, 638 n.1 (7th Cir. 2010) ..................... 26, 27

*EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037-39, 1048 (10th Cir. 2011)24, 29, 30

*EEOC v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 131 (1st Cir. 2014) ................. 26

*Hughes v. Wal-Mart Stores E. LP*, No. 1:11 CV 400, 2013 U.S. Dist. LEXIS 86697, at *10 (N.D. Ind. June 20, 2013) ................................................................. 39

*Huston v. Mittal Steel USA*, No. 2:06-cv-552, 2006 U.S. Dist. LEXIS 67323, at

*10-12 (S.D. Ohio Sep. 20, 2006) ....................................................38

*Hwayng v. Kan. State Univ.*, 753 F.3d 1159, 1163 (10th Cir. 2014)......................34

*Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011) (unpublished) ...................................................................26

*Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 747-48 (7th Cir. 2011) ...... 24, 26

*Lederman v. Frontier Fire Prot. Inc.*, 685 F.3d 1151, 1154, 1159 (10th Cir. 2012) ........................................................................ 22, 32

*Level 7 Communications, LLC v. Liebert Corp.*, 535 F.3d 1146, 1161-62 (10th Cir. 2008) ........................................................................ 33, 43

*Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) ....................26

*Martinsky v. City of Bridgeport*, 504 F. App'x 43, 47 (2d Cir. 2012) (unpublished) ...................................................................26

*Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008).............................26

*Mzyk v. N.E. Indep. Sch. Dist.*, 397 F. App'x 13, 16 n.3 (5th Cir. 2010) (unpublished) ...................................................................26

*Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) ......................................26

*Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001).............25

*Smith v. Midland Brake, Inc.*, 180 F.3d at 1154, 1169, 1179 (10th Cir. 1999)24, 25, 35

*Smith v. Secretary of N.M. Dep't of Corrections*, 50 F.3d 801, 821 n.30 (10th Cir. 1995) ........................................................................35

*Spielman v. Blue Cross & Blue Shield of Kan., Inc.*, 33 Fed. Appx. 439, 443 (10th Cir. 2002) (unpublished) ................................................... 25, 28

*Starks v. New Par*, No. 98-1300, 1999 U.S. App. LEXIS 9145, at *15, 1999 WL 357757 (6th Cir. May 11, 1999) .......................................................39

*Stephenson v. Pfizer, Inc.*, 641 F. App'x 214, 219 (4th Cir. 2016) (unpublished)..26

*United States v. Lee*, 54 F.3d 1534, 1536 (10th Cir. 1995) ............................. 22, 37

*Vanguard Recovery Assistance v. United States*, 99 Fed. Cl. 81, 95 (Fed. Cl. 2011) ...................................................................................................40

*Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 867 (10th Cir. 2003) ............ 32, 43

*Wells v. City of Alexandria*, No. 03-30750, 2004 U.S. App. LEXIS 8525, at *9-10, 2004 WL 909735 (5th Cir. April 29, 2004)...................................................39

*Woodruff v. Peters*, 482 F.3d 521, 527 (D.C. Cir. 2007).........................................34

**Statutes**

28 U.S.C. § 1291 .......................................................................................................1

28 U.S.C. § 1331 .......................................................................................................1

28 U.S.C. § 1343 .......................................................................................................1

28 U.S.C. § 1357 .......................................................................................................1

29 C.F.R. § 1630.15(d) ............................................................................................34

42 U.S.C. § 12101, et seq..........................................................................................1

42 U.S.C. § 12112(b)(5)(A) ........................................................................ 25, 30, 34

**Rules**

Fed. R. App. P. 4(a)(1)(A) .........................................................................................1

Fed. R. Civ. P. 8 ......................................................................................................39

# I.    PRIOR OR RELATED APPEALS

There are no prior or related appeals.

# II.    STATEMENT OF APPELLATE JURISDICTION

(A)    Pursuant to 28 U.S.C. §§ 1331, 1343, and 1357, the District Court had subject matter jurisdiction over the claims alleged in this case because they arose under the laws of the United States, including the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*

(B)    Pursuant to 28 U.S.C. § 1291, this Court has jurisdiction over the appeal because it is an appeal of a final decision by the United States District Court for the District of Colorado.  (*See* Aplt. App. Vol. II p. 462-64.)

(C)    This appeal was timely filed in accordance with Fed. R. App. P. 4(a)(1)(A) because the Notice of Appeal was filed within thirty (30) days after entry of the judgment appealed from.  The final judgment was entered on October 12, 2016.  (Aplt. App. Vol. II p. 462-64.)  The Notice of Appeal was filed six days later on October 18, 2016.  (Aplt. App. Vol. II p. 465-66.)

(D)    This appeal is from a final judgment that disposed of all parties' claims.

# III.    ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court erred by instructing the jury it must find Plaintiff-Appellant suffered an adverse employment action to succeed on a failure to accommodate claim under the Americans with Disabilities Act ("ADA"), and

that Plaintiff-Appellant bore the burden on Defendant's never-asserted undue hardship affirmative defense, when applicable law does not include an adverse employment action as an element of a failure to accommodate claim and deems undue hardship an affirmative defense.

2.      Whether the District Court erred by barring Plaintiff-Appellant from pursuing a discrimination claim under the ADA through a constructive discharge theory, when she plead "discharge" and "termination" and her forced resignation was at issue through discovery, summary judgment briefing, and the pretrial order.

3.      Whether the District Court erred by refusing to instruct the jury on constructive discharge when the District Court required Plaintiff to prove as part of her failure to accommodate claim that she suffered an adverse employment action, thus preventing Plaintiff from asserting that constructive discharge was an adverse employment action.

## IV.      STATEMENT OF THE CASE

### A.      <u>Nature of the Case</u>

This case is about Defendant Board of County Commissioners, Weld County, Colorado's (Defendant or "the County") failure to accommodate Plaintiff-Appellant Laurie Exby-Stolley's ("Ms. Exby") disability. Ms. Exby was able and willing to continue to perform her job, but Defendant refused to accommodate her disability, and her supervisor eventually asked her, "Do you want me to write your

letter of resignation, or do you want to write it?" and "Why don't you just go on disability [benefits]?" Defendant was forcing Ms. Exby out. After being forced out, she filed suit alleging discrimination resulting in her discharge and failure to accommodate under the ADA.

Defendant argued to the District Court that Ms. Exby was not terminated because she quit, but the District Court barred Ms. Exby from asserting a constructive discharge theory at trial. Ms. Exby thus could not assert a traditional discrimination claim and proceeded to trial only on her failure to accommodate claim.

The District Court instructed the jury, contrary to applicable law, that an adverse employment action is an element of a failure to accommodate claim. It also instructed the jury that Ms. Exby had to prove accommodations would not impose an undue hardship on Defendant, despite the fact that Defendant never asserted undue hardship as an affirmative defense and black letter makes clear undue hardship is an affirmative defense. The jury found Ms. Exby was disabled and a qualified person under the ADA, but found she did not suffer an adverse employment action.

This appeal is about whether the District Court erred in instructing the jury that it must find an adverse employment action in order to find for Ms. Exby on her failure to accommodate claim, erred in instructing the jury that Ms. Exby bore the

burden of proof on undue hardship, and erred in barring Ms. Exby from asserting constructive discharge at trial and refusing to instruct the jury on it.

## B. <u>Procedural History</u>

Ms. Exby filed her Complaint on May 30, 2013, and filed her Amended Complaint on June 20, 2013, alleging the County violated the ADA by discharging her because of her disability and failing to reasonably accommodate her disability. (Aplt. App. Vol. I p. 21-25.)  The County's answers did not allege undue hardship as an affirmative defense.  (Aplt. App. Vol. I p. 26-34.) On September 10, 2013, Ms. Exby served her first set of discovery requests on the County, including a request for Defendant to provide "[a]ll written communications to, from, or regarding the Plaintiff, including any memoranda or notes regarding the Plaintiff;" the County responded that all such documents had already been produced with its initial disclosures.  (Aplt. App. Vol. I p. 277.)

Defendant filed a motion for summary judgment on July 23, 2014 (Aplt. App. Vol. I p. 35-70), Ms. Exby responded (Aplt. App. Vol. I p. 71-101), and Defendant filed its reply (Aplt. App. Vol. I p. 102-143).

While the motion for summary judgment was pending, the District Court entered a Final Pretrial Order. The order set forth Ms. Exby's claims for failure to accommodate, discrimination resulting in constructive discharged, and failure to engage in the interactive process.   (Aplt. App. Vol. I p. 144-45.) Defendant

identified its defenses, but undue hardship was not among them.  (*Id.* at p. 149-51.)

On March 30, 2015, the District Court denied Defendant's motion for summary judgment. Trial was originally set for June 15, 2015. On May 18, 2015, Defendant filed its Disputed Proposed Jury Instructions.  The County's instruction for failure to accommodate did not include an adverse employment action as an element.  (Aplt. App. Vol. I p. 176.)  It did, however, include "not constructively discharged or did not resign her position" as an element.  (*Id.*)  Defendant also provided an instruction on constructive discharge, noting that "Plaintiff, Laurie Exby-Stolley, claims that she was constructively discharged." (*Id.* at p. 178.)

Ms. Exby also filed disputed jury instructions the same day, which included a definition for constructive discharge. (Aplt. App. Vol. I p. 181.)

Both Ms. Exby and the County filed proposed verdict forms on May 18, 2015. Ms. Exby's identified four theories of recovery under the ADA for (1) failure to engage in the interactive process, (2) constructive discharge, (3) failure to accommodate, and (4) retaliation.  (Aplt. App. Vol. I p. 184.)  Defendant's proposed verdict form also asked the jury if Ms. Exby was constructively discharged. (*Id.* at 188.) It did not ask the jury whether Ms. Exby had suffered an adverse employment action.  (*Id.* at 188-190.)

On May 22, 2015, Defendant filed its objections to Ms. Exby's disputed jury instructions and stipulated instructions. Defendant did not object to the lack of an

adverse employment action in Ms. Exby's disputed instruction on reasonable accommodation, though it did object that Ms. Exby did not allege a claim for constructive discharge in the Amended Complaint. (Aplt. App. Vol. I p. 191-196.)

Then the District Court *sua sponte* vacated the trial date and continued it for approximately one year, until April 25, 2016.

On March 31, 2016, the District Court held a Trial Preparation Conference at which the court suggested because Ms. Exby had not pled "constructive discharge," she should be precluded from asserting it. (Aplt. App. Vol. II p. 503:12-504:11.) Ms. Exby argued constructive discharge did not need to be separately pled and it was encompassed within the ADA discrimination claim which alleged termination and discharge. (*Id.*) The District Court was not persuaded and deleted mention of constructive discharge from the statement of the case and precluded Ms. Exby from asserting it. (*Id.* at 504:4-11.)

Defendant filed its Amended Proposed Jury Instructions on April 11, 2016. Its amended proposed instructions did not include an adverse employment action as an element of the failure to accommodate claim. (Aplt. App. Vol. I p. 199-200.) In Defendant's Second Amended Proposed Verdict Form filed the same day, the County did not mention either adverse employment action or constructive discharge. (*Id.* at 201-04.)

Ms. Exby's Disputed Jury Instructions, also filed on April 11th, identified her

failure to accommodate and discharge theories of recovery (Aplt. App. Vol. I p. 208), did not include an adverse employment action as an element of the failure to accommodate claim (*Id.* at 209), and identified undue hardship as an affirmative defense the County must prove. (*Id.*) Ms. Exby provided legal authority for the instructions. (*Id.*) Ms. Exby's Proposed Verdict Form filed the same day did not reference an adverse employment action. (*Id*. at 210-13.)

The parties' Stipulated Jury Instructions filed on April 11th identified failure to accommodate as itself a form of prohibited discrimination under the ADA. (Aplt. App. Vol. I p. 216.)

On April 20, 2016 (five days before trial), Defendant provided nearly 300 pages of documents for the first time, many of which were emails clearly responsive to Plaintiff's 2013 discovery requests and directly bearing on the material issues in dispute, including discussion of Ms. Exby's disability and accommodations. (Aplt. App. Vol. I p. 217-231.) Ms. Exby filed a motion for sanctions for the extremely late disclosure and noted that evidence indicated Defendant either knew of the documents long before or failed to conduct an adequate search for documents. (*Id.*) Ms. Exby sought an adverse instruction and/or default judgment as a sanction because of the extreme prejudice the late disclosure caused, the three years Defendant had to find and produce the documents, and the discovery – including several depositions – that had been done

was now tainted and incomplete. (*Id.*) The County asserted it discovered the trove of documents in a separate file of a County employee, Ms. Exby's direct boss who had been deposed, as it prepared for trial. (Aplt. App. Vol. I p. 232.) The District Court only ordered limited additional discovery, ordered Defendant to certify it had searched for and provided all responsive documents, and continued the trial to October 3, 2016. (Aplt. App. Vol. I p. 253-57.)

Just before the District Court issued its order, Defendant filed its Third Amended Disputed Jury Instructions. (Aplt. App. Vol. I p. 249-252.) Defendant did not identify an adverse employment action as an element of the failure to accommodate claim. (*Id.* at 250.) Defendant's instruction defining discrimination included failure to accommodate as an act of discrimination. (*Id.* at 252.)

On May 16, 2016, Defendant produced another 14,000 pages of documents it had not previously produced, and evidence suggested Defendants did not search for or produce emails. (Aplt. App. Vol. I p. 258-73.) Ms. Exby was forced to file another sanctions motion. (*Id.*) In its opposition, Defendant conceded it had discovered another 40,000 pages of material, including 7,000 pages of emails regarding Ms. Exby, and was in the process of reviewing them. (Aplt. App. Vol. II p. 295-307.) The District Court still refused to order default judgment, issue an adverse instruction, or preclude the County from introducing certain evidence; rather it allowed certain limited additional discovery. (Aplt. App. Vol. II p. 308-

312.)

On September 7, 2016, the District Court entered the Amended Final Pretrial Order. It noted that Ms. Exby complained of discrimination and failure to accommodate. (Aplt. App. Vol. II p. 313-14.) It does not identify undue hardship as one of the defenses. (*Id*. at 321-23.)

The County filed its Fourth Amended Disputed Jury Instructions on September 22, 2016. Again, Defendant did not include an adverse employment action as an element of the failure to accommodate claim. (Aplt. App. Vol. II p. 354-55.) Ms. Exby's Disputed Jury Instructions filed on September 26th again identified its failure to accommodate and termination theories (*Id.* at 358), included failure to accommodate among the examples of discrimination in the instruction defining discrimination under the ADA (*Id.* at 359), and did not include an adverse employment action as an element of the failure to accommodate claim, but did provide extensive citations to authority for the correct instruction. (*Id.* at 360.)

In its Supplemental Objections to Plaintiff's Jury Instructions filed on September 26th, the County did not object to the lack of an adverse employment action element in Ms. Exby's instruction on failure to accommodate, or to her instruction including failure to accommodate as a type of discrimination. (Aplt. App. Vol. II p. 361-66.) Two days later, the County again supplemented its objections to Plaintiff's instructions and verdict form, which again raised no

objection regarding the lack of an adverse employment action element in failure to accommodate, or that failure to accommodate is itself a discriminatory act. (*Id.* at 367-73.)

On September 29th, Defendant filed its Fifth Amended Disputed Jury Instructions. Once more, the County did not include an adverse employment action as an element of the failure to accommodate claim. (Aplt. App. Vol. II p. 375-76.) And Defendant defined discrimination to include a failure to accommodate. (*Id.* at 377.) In her Objections to Defendant's Jury Instructions, Ms. Exby identified the elements for failure to accommodate, which do not include an adverse employment action, and cited as authority for the elements. *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 830 n.2 (10th Cir. 2011), among other cases. (*Id.* at p. 381-383; 390-91.) Ms. Exby also objected that the County did not plead undue hardship, citing the Pre-trial order and applicable caselaw on the elements of failure to accommodate. (*Id.* at 392-93.)

The trial started on September 30, 2016.[1] During the pretrial conference that morning, Defendant identified all affirmative defenses and did not identify undue burden among them. (Aplt. App. Vol. III p. 737:10-14.) On the third day of trial, October 4th, the Trial Court provided its proposed instructions, which included, for

---

[1] The case was tried on a peculiar schedule to accommodate the District Court. It started on Friday, September 30th, resumed after the weekend on Monday, October 3rd, going through Wednesday, October 5th. Then there was a recess and it resumed for the final day on Tuesday, October 11th.

the first time, an adverse employment action as an element of the failure to accommodate claim as well as requiring Ms. Exby to prove that her disability was a substantial or motivating reason for the adverse employment action. That night, Ms. Exby prepared a submission, which was filed the next morning before the jury instruction conference. The submission provided a litany of case law and summarized that law showing no adverse employment action was required in a failure to accommodate claim. The submission also included links to the Fifth, Seventh, and Eleventh Circuit's pattern jury instructions for failure to accommodate, none of which include an adverse employment action element, and quotes from myriad cases from the Tenth Circuit and beyond that demonstrated an adverse employment action is not an element of a failure to accommodate claim. (Aplt. App. Vol. II p. 395-400.)

During the jury instruction conference on October 5th, the District Court and parties discussed the applicable law as it applied to the instructions. This discussion is described in more detail below. Also on October 5th, Ms. Exby proffered Plaintiff's Instruction No. 8 for failure to accommodate (with supporting authority), which did not include an adverse employment action element; the District Court refused it. (Aplt. App. Vol. II p. 401.) She submitted a Failure to Accommodate—Elements instruction, which the District Court also refused. (*Id.* at 402.) When the District Court made clear it was going to include an adverse

employment action as an element of the failure to accommodate claim, Ms. Exby submitted her Instruction 11, which defined adverse employment action to include a failure to accommodate. (*Id.* at 403.) The District Court refused that as well. (*Id.*) In Plaintiff's Proposed Verdict Form submitted the same day, which the District Court refused, Ms. Exby sought to ask the jury whether she was terminated because of her disability, and whether she was discriminated against by failure to accommodate. (*Id.* at 413-15.)

On October 11, 2016, Ms. Exby submitted Plaintiff's Instruction No. 12, which stated she may prove discharge from employment by showing she was compelled to resign. (Aplt. App. Vol. II p. 416.) The District Court refused that instruction. (*Id.*) The District Court also refused Plaintiff's Instruction No. 13, defining reasonable accommodation. (*Id.* at 417.)

The jury instructions the District ultimately adopted and provided to the jury included discharge or other adverse employment action as an element of Ms. Exby's failure to accommodate claim. (Aplt. App. Vol. II p. 440-42.) They included an instruction that "reasonable accommodation" does not include efforts that would cause an undue hardship on Defendant, but did not provide Defendant bore the burden of proof on that affirmative defense. (*Id.* at 448.) They defined "undue hardship," again without noting Defendant bore the burden of proof. (*Id.* at 450.) The instruction for "adverse employment action" did not include failure to

accommodate or constructive discharge as a type of adverse employment action. (*Id.* at 449.)

The verdict form adopted by the District Court and given to the jury asked whether Ms. Exby had proven she was discharged, not promoted, or suffered another adverse employment action in order to recover on her failure to accommodate claim. (Aplt. App. Vol. II p. 419.) It also required Plaintiff to prove that her disability was a substantial or motivating factor in the County's actions against her.

The jury ultimately found against Ms. Exby, noting that while Ms. Exby proved she was disabled and a qualified individual with a disability, she had not proven an adverse employment action. (Aplt. App. Vol. II p. 462-63.) Ms. Exby filed her Notice of Appeal on October 18, 2016. (*Id.* at 465-66.)

## V.       STATEMENT OF FACTS

Ms. Exby worked for Weld County as a health inspector for 14 years. She holds a master's degree in Environmental Policy. A health inspector's job can include many facets, but largely involves inspecting various public and private businesses to ensure compliance with health regulations. Ms. Exby had 18 years' experience in environmental regulation, including inspecting restaurants, schools, public pools, ambulances, tattoo parlors, and other businesses. This work consists mostly of an inspector visually observing food safety practices, testing food

temperatures, interviewing employees, and writing the results of the inspection in a pre-printed form. Occasionally, an inspection requires lifting, pushing, or pulling food containers. In Ms. Exby's career, on only one occasion did she have to move an object weighing more than 25 pounds. (Aplt. App. Vol. IV p. 879:24-889:11.)

In 2009, Ms. Exby was working for the County at an H1N1 flu vaccine clinic when she tripped, fell, and broke her dominant arm, her right, near the elbow joint. She was treated through the worker's compensation system, which at first failed to properly diagnose her broken arm or adequately treat her injury. From the date Ms. Exby got injured, the County treated Ms. Exby's situation exclusively under the worker's compensation system, placing her on and off light duty as her worker's comp doctors imposed and removed work restrictions. At all times, the County and all of Ms. Exby's supervisors knew about her injury, and the County was in constant communication with the doctors regarding Ms. Exby and her injury. (Aplt. App. Vol. IV p. 889:23-892:18.)

In June of 2010, Ms. Exby underwent her first surgery to fix her arm because she was in constant pain, couldn't lift heavy objects, twist her wrist, or rotate her arm. The surgery helped a little but didn't fully solve the problem. Throughout the time when she was injured, she continued to work, taking minimal time off, and doing her regular inspections. Ms. Exby developed various tools and work-arounds so she could continue doing her job with minimal interruption. For

example, she used a headlamp instead of holding a flashlight, used a paint-bucket opener to help her open large bins of food, and wore a utility-belt so she could easily access her various inspection tools. Unfortunately, because she was learning to do nearly everything in her life—such as writing—with her non-dominant left hand, it took her longer to do inspections than before. Because inspectors must inspect a certain number of facilities each year, Ms. Exby fell behind and the County began to criticize her for it. (Aplt. App. Vol. IV p. 890:19-900:7.)

In September 2011, Ms. Exby was working her regular inspection job, without restrictions, when the County said her work was deficient and asked her why she unable to keep up. Ms. Exby responded, in writing, telling the County that her broken arm made things much harder and made her inspections go slower. (Aplt. App. Vol. II p. 468-69.)

In November 2011, Ms. Exby underwent her second elbow surgery to move her ulnar nerve because it was so painful. (Aplt. App. Vol. IV p. 891:7-893:16.) While she was out for surgery, the County wondered "if" it could keep Ms. Exby busy with light duty when she returned. One of Ms. Exby's supervisors, Deb Adamson, asked HR about whether Ms. Exby could work and asked for advice as to what Ms. Exby was allowed to do. HR responded by suggesting that if she could do inspection (a/k/a field duties), she should be accommodated and that Ms. Adamson should meet with Ms. Exby to "review" Ms. Exby's "limitations and

restrictions as well as suggested accommodations to prevent further injury." (Aplt. App. Vol. II p. 470.)

Ms. Exby returned to work after her second surgery in January and quickly resumed her normal inspection duties, without restrictions, though her injury never disappeared and she continued to be slow due to the injury and having to use her non-dominant hand and arm. In March 2012, she met with her boss to go over her performance review for 2011. During the review, the County told Ms. Exby her performance was below expectations. Ms. Exby noted that her injury caused her many problems. (Aplt. App. Vol. IV p. 899:3-900:7.) The County responded:

> The 2011 evaluation done in the context of work you were allowed to do by your physicians. **We can't factor in the injury and talk about it in relationship to your performance. Unless we are advised to do so by your physicians, we can't modify your workload and expectations.** If you feel that your injury is affecting your ability to do your work or that there are residual limitations that mean you can't do as much work, then those issues must be raised with Human Resources and the Workmen's Compensation program. Outside of that, the expectations for your performance when you are working without restrictions, as you are right now and did during the majority of 2011, will remain the same, in quality and quantity, as they are for the rest of the people who work in the same programs that you do.

(Aplt. App. Vol. II p. 474-475.)[2]

So, on March 28th, Ms. Exby went back to her worker's comp doctor and told him that the County wouldn't accommodate her unless her doctor restricted

---

[2] At trial, the County's head of HR admitted that this is incorrect and the ADA does not require a physician's blessing to accommodate a disabled employee. (Aplt. App. Vol. IV p. 978:2-5; 987:23-988:1.)

her. Ms. Exby's doctor re-imposed some lifting and other restrictions in the hope the County would accommodate her. (Aplt. App. Vol. IV p. 900:8-904:1; Aplt. App. Vol. II p. 476-77.) But no one met with Ms. Exby to discuss restrictions or accommodations or even informed her about HR's suggestions. (Aplt. App. Vol. IV p. 915:1-7.) Instead, in April 2012, Ms. Exby's boss asked Ms. Exby to email a list of things that were hard to do. Ms. Exby responded that while nothing was impossible for her to do, a handful of tasks caused her pain and were difficult. (Aplt. App. Vol. II p. 478.)

Nonetheless, due to the physician-imposed restrictions the County told her were necessary to accommodate her, on April 16, 2012, the County did the opposite of accommodating her: the County placed Ms. Exby on light duty, cut her hours in half, and reduced her responsibilities even though Ms. Exby was able to do her regular job and just needed a little more time to do her inspections. (Aplt. App. Vol. II p. 482; Aplt. App. Vol. IV p. 914:2-12.) On May 8, the County sought to hire an intern at half Ms. Exby's salary (without benefits) to do the inspections the County refused to let Ms. Exby do because she was on restrictions. (Aplt. App. Vol. IV p. 919:15-920:7.) It was so obvious that the intern would replace Ms. Exby that one employee asked Ms. Exby's boss (Ms. Exby wasn't part of the email), "OMG, how long does she have?" (Aplt. App. Vol. II p. 487.) Turns out, six weeks.

At the same time the County was hiring Ms. Exby's replacement, her department supervisor asked Ms. Exby why she "didn't just go out on disability?" (Aplt. App. Vol. II p. 489); Aplt App. Vol. IV p. 919:5-14.) Ms. Exby didn't want to just go out on disability; she wanted to work. (Aplt. App. Vol. II p. 489); Aplt. App. Vol. IV p. 919:5-14.) But Ms. Exby knew her time at the County was limited. (Aplt. App. Vol. IV p. 913:6-8.) Ms. Exby asked to meet with her supervisors and HR to discuss accommodations. On June 6, her doctors proclaimed she reached maximum medical improvement and imposed permanent restrictions. (Aplt. App. Vol. IV p. 920:20-923:4.) HR and Ms. Exby's bosses met and discussed the permanent restrictions, without Ms. Exby and without informing Ms. Exby. (Aplt. App. Vol. IV p. 921:25-922:12.) They discussed possible accommodations, which included long-term disability, which is not an accommodation at all. (Aplt. App. Vol. II p. 490.)

In June of 2012, Ms. Exby met with her supervisors, but no one from HR was present despite Ms. Exby's explicit request HR be present. At that meeting, the County did not suggest any accommodations and rejected accommodations Ms. Exby suggested. Without any accommodations on the horizon and having been encouraged to "go out on disability," Ms. Exby said, "I give my right arm to Weld County and this is what happens?" (Aplt. App. Vol. IV p. 925:17-929-2.) Immediately after the meeting, Ms. Exby's boss asked her, "do you want to write

your resignation letter or do you want me to?" (Aplt. App. Vol. IV 929:2-5.) They then met with HR who provided Ms. Exby with information to apply for long-term disability benefits. (Aplt. App. Vol. IV p. 929:6-930:15.)

So, a week later, Ms. Exby writes an email to the County on June 21, telling everyone her last day would be June 29. (Aplt. App. Vol. IV p. 930:21-932:4.) In response to her email, the County's lawyer wrote, "My gut tells me that if she can't do the job then she can't do the job and she's being terminated because of that." (Aplt. App. Vol. II p. 491.)

## VI.     SUMMARY OF THE ARGUMENT

At trial, Ms. Exby asserted two claims: failure to accommodate and discrimination resulting in discharge. For the first claim of failure to accommodate, the District Court erroneously instructed the jury that Ms. Exby had to prove, as an element of the claim, that she suffered an adverse employment action. The instruction contradicted well-established Tenth Circuit law, the law of the vast majority of sister Circuits, and the plain reading of the ADA itself, all of which do not require an adverse employment action to prove a failure to accommodate claim because the failure to accommodate itself constitutes discrimination and is an adverse employment action.

Though Ms. Exby provided the District Court with that law, and several pattern instructions, including those from three other Circuits, demonstrating that a

failure to accommodate claim includes no adverse employment action element, the District Court ignored it all. Instead, in contravention of binding Tenth Circuit law, the District Court required Ms. Exby to prove she suffered a second separate adverse employment action in her failure to accommodate claim. The court included this element in the instructions and verdict form. The court also refused Ms. Exby's request to include failure to accommodate as an example of an "adverse employment action" in the instruction defining that phrase.

Additionally, the District Court's instruction on failure to accommodate suggested that Ms. Exby bore the burden to show accommodation would not cause Defendant undue hardship. This was despite the fact that undue hardship is an affirmative defense that Defendant had to prove. These errors were fatal to Ms. Exby's claim. While Tenth Circuit law requires reversal when it is merely possible the erroneous instruction affected the verdict, here the jury's verdict form confirms it did.

The second claim Ms. Exby asserted at trial was discriminatory termination, which, as became clear early in the case, was via a constructive discharge. However, the District Court precluded Ms. Exby from asserting constructive discharge at trial because she alleged "termination" and "discharge," rather than the magic words "constructive discharge" in the complaint. But extensive discovery on constructive discharge was conducted and it was included in Ms.

Exby's first pretrial conference order, with no objection from Defendant.

Despite the fact that the court barred the claim of constructive discharge, Ms. Exby requested an instruction on constructive discharge since the District Court required her to prove adverse employment action in her failure to accommodate claim. But, the court refused Ms. Exby's proffered jury instruction on constructive discharge. The District Court went even further by barring Ms. Exby from mentioning the phrase "constructive discharge" at trial. The effect was both that Ms. Exby was barred from pursuing one of her theories of recovery and she was barred from demonstrating the constructive discharge as an adverse employment action in the failure to accommodate claim. The latter point was particularly prejudicial because it compounded the District Court's error of including an adverse employment action as an element of a failure to accommodate claim.

In other words, the District Court required Ms. Exby to prove something she did not have to prove, then precluded her from proving it.

## VII.     ARGUMENT

**A.**     **The District Court Erred in Instructing the Jury it Must Find an Adverse Employment Action on Ms. Exby's Failure to Accommodate Claim and Misallocating the Burden for Defendant's Undue Hardship Defense**

### 1.     Standard of Review

The Tenth Circuit reviews "a district court's decision to give a particular

jury instruction for abuse of discretion, but [the Tenth Circuit] review[s] de novo legal objections to the jury instructions." *Lederman v. Frontier Fire Prot. Inc.*, 685 F.3d 1151, 1154 (10th Cir. 2012) (internal quotation marks omitted). "The question of whether a jury was properly instructed is a question of law, and thus, review is de novo." *United States v. Lee*, 54 F.3d 1534, 1536 (10th Cir. 1995). If the trial court erred, the Tenth Circuit then determines whether the error was prejudicial enough to warrant reversal. *Lederman*, 685 F.3d at 1155.

### 2. Issue Raised and Ruled Upon

Ms. Exby objected multiple times in writing to Defendant's proffered instructions consistent with the Case Management Order. First, approximately a month before the first trial in 2015 (Aplt. App. Vol. V p. 1223-39.) Second, on September 29, 2016 just before the second trial. (Aplt. App. Vol. II p. 378-94.) Also, on several occasions, Plaintiff proffered both a jury instruction and verdict form that properly articulated the elements of a failure to accommodate claim under the ADA, which did not include an adverse employment action as an element. (Aplt. App. Vol. I p. 179-81, 182-85, 206-09, 210-13; Aplt. App. Vol. II p. 356-60, 401, 402, 412.) Ms. Exby also objected to the court's verdict form and instructions on the elements of a failure to accommodate claim and provided both orally and in writing extensive case law setting forth the proper elements of the claim. (Aplt. App. Vol. II p. 395-400; Aplt. App. Vol. V p. 1153:23-1182:3.) The

District Court rejected Ms. Exby's proffered instruction and verdict form regarding the elements of the failure to accommodate claim. (Aplt. App. Vol. II p. 412-15.)

Ms. Exby objected to Defendant's proffered instruction that Ms. Exby bore the burden of proof on the issue of undue hardship, as it instructed the jury that an accommodation is not reasonable if it would cause an undue hardship on a defendant. (Aplt. App. Vol. V p. 1185:10-1190:6, 1194:7-1195:19.) Nonetheless, the District Court instructed the jury that it must find "Plaintiff was discharged from employment or suffered another adverse employment action by Defendant" in order to find for Ms. Exby on her failure to accommodate claim, and that a reasonable accommodation does not include efforts that would cause an undue hardship. (Aplt. App. Vol. II p. 419, 440-42, 448.) The court abused its discretion in giving the instructions and verdict form and in rejecting Plaintiff's instructions and verdict form and the court's instructions and verdict form were erroneous as a matter of law.

### 3. Discharge or Adverse Employment Action is Not an Element of a Failure to Accommodate Claim.

The District Court erroneously instructed the jury that Ms. Exby could not succeed on a failure to accommodate claim unless she proved she suffered a discharge or adverse employment action. As the District Court should have known, but perhaps was confused, a failure to accommodate claim is not the same thing as a disparate treatment claim. The latter does require an adverse employment action

while the former does not.

Under well-established Tenth Circuit law, an adverse employment action is not required for a failure to accommodate claim under the ADA because the failure to accommodate is itself the discrimination. *EEOC v. C.R. England, Inc*., 644 F.3d 1028, 1048 (10th Cir. 2011); *Bristol v. Bd. of Cty. Comm'rs of Clear Creek*, 281 F.3d 1148, 1164 (10th Cir. 2002); *Smith v. Midland Brake, Inc.*, 180 F.3d at 1169 (10th Cir. 1999) (noting "an employer discriminates against a qualified individual with a disability if the employer fails to offer a reasonable accommodation."). The elements of a failure to accommodate claim are:

(1) Plaintiff is a qualified individual with a disability;

(2) the employer was aware of the disability;

(3) the employer failed to reasonably accommodate the disability.

*Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 830 n.2 (10th Cir. 2011) (unpublished) (quoting *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 747-48 (7th Cir. 2011)); *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912 n.4 (10th Cir. 2004) (discussing the elements of a wrongful termination claim under the ADA and a failure to accommodate claim under the ADA, and noting that the termination element in a wrongful termination claim is replaced by a failure to make reasonable accommodations element in a reasonable accommodation claim); *Spielman v. Blue Cross & Blue Shield of Kan., Inc.*, 33 Fed. Appx. 439, 443 (10th

Cir. 2002) (unpublished); *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) (noting under ADA, failure to accommodate is itself discrimination, and disabled employees have cause of action when employers fail to reasonably accommodate them); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1169, 1179 (10th Cir. 1999) (discussing elements of ADA failure to accommodate claim, which did not include an adverse employment action, in context of summary judgment). Thus, there is no requirement for an adverse employment action.

The Tenth Circuit's articulation of the elements of a failure to accommodate claim is supported by the plain language of the ADA. The ADA prohibits discrimination against people with disabilities, then defines discrimination to include:

> Not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]

42 U.S.C. § 12112(b)(5)(A). In other words, the statute's language makes clear that failure to accommodate is discrimination. Thus, the statute does not require an additional act of discrimination such as an adverse employment action to demonstrate an employer violated the ADA by failing or refusing to accommodate someone's disability.

Tenth Circuit precedent is binding on the District Court regardless of the law

in other jurisdictions, but the Tenth Circuit is not alone in concluding that an adverse employment action is not required in a failure to accommodate claim. The First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eleventh Circuits all agree. *EEOC v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 131 (1st Cir. 2014); *Martinsky v. City of Bridgeport*, 504 F. App'x 43, 47 (2d Cir. 2012) (unpublished); *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503-04 (3d Cir. 2010) (noting that refusing to accommodate disability is an adverse employment action); *Drozdowski v. Northland Lincol Mercury*, 321 F. App'x 181, 184 (3d Cir. 2009) (unpublished); *Stephenson v. Pfizer, Inc.*, 641 F. App'x 214, 219 (4th Cir. 2016) (unpublished); *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001); *Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015) (unpublished); *Mzyk v. N.E. Indep. Sch. Dist.*, 397 F. App'x 13, 16 n.3 (5th Cir. 2010) (unpublished); *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011) (unpublished); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 224 (7th Cir. 2015); *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 747-48 (7th Cir. 2011); *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).

In *EEOC v. AutoZone, Inc.*, 630 F.3d 635, 638 n.1 (7th Cir. 2010), the Seventh Circuit addressed precisely the error the District Court made here:

> The district court correctly identified the components of the reasonable accommodation test in the first part of its decision, citing

the three-step inquiry outlined by the Supreme Court in *Bragdon v. Abbott*, 524 U.S. 624, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998). When applying the facts to the law, however, the court appears to have mistakenly applied an element of the disparate treatment test as part of its evaluation of reasonable accommodation. The court strayed from the reasonable accommodation test it had identified by requiring that the EEOC demonstrate an adverse employment action against Shepherd. **No adverse employment action is required to prove a failure to accommodate.** See *Bragdon*, 524 U.S. at 631; see also *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001) (describing and applying the same test for determining whether an individual is a qualified individual with a disability under the ADA); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437-40 (7th Cir. 2000) (same).

*Id.* (emphasis added).

The pattern jury instructions for Fifth, Seventh, and Eleventh Circuits also all articulate the elements of an ADA reasonable accommodation claim and none of them include an adverse employment action. Pattern Jury Instructions (Civil Cases) Fifth Circuit 11:10; Federal Jury Instructions of the Seventh Circuit 4:03; Eleventh Circuit Civil Pattern Jury Instructions 4.12.

**4.    Despite Ms. Exby Providing the District Court with the Applicable Law, the Court Rejected Tenth Circuit law and Erroneously Instructed the Jury it Must Find an Adverse Employment Action.**

Ms. Exby presented the District Court with case law and these pattern jury instructions. Each time, when jury instructions were submitted before trial, Ms. Exby submitted her instructions regarding the elements of failure to accommodate. (Aplt. App. Vol. I p. 179-81, 206-09, ; Aplt. App. Vol. II p. 356-60.) Ms. Exby's instructions cited various law and cases to support her instructions. (*Id.*) Also, Ms.

Exby objected to Defendant's instructions and verdict form—both before the first trial in 2015 and before the third trial date in late 2016—because they did not set forth the correct elements of a failure to accommodate claim. (Aplt. App. Vol. V p. 1223; Aplt. App. Vol. II p. 378-94.) Ms. Exby provided case law to support her objections. (*Id.*) The court did not rule until the instruction conference during trial.

On the third day of trial, the court provided its own proposed instructions. For the first time, proposed instructions included as elements of the failure to accommodate claim an adverse employment action and that Plaintiff's disability was a substantial or motivating factor for that adverse action. That night, Plaintiff prepared a submission, which was filed the next morning before the jury instruction conference, summarizing for the court the case law outlining the elements of a failure to accommodate claim and providing links to three circuit courts' pattern instructions on the claim, all of which did not include an adverse employment action as an element of the claim. During the jury instructions conference, Ms. Exby pointed the court to *Spielman*, 33 Fed. Appx. at 443, which also did not include an adverse employment action among the elements for failure to accommodate. (Aplt. App. Vol. II p. 395-400; Aplt. App. Vol. V p. 1174:25-1175:9.) And Ms. Exby expressly noted that the ADA itself defines failure to accommodate as discrimination. (Aplt. App. Vol. V p. 1173:1-17.) She addressed that while the elements for a typical ADA disability discrimination claim include

an adverse employment action, *C.R. England*, 644 F.3d at 1037-38, an ADA claim for failure to accommodate lacks that element because the failure to accommodate is itself discrimination, *C.R. England*, 644 F.3d at 1048. (Aplt. App. Vol. V p. 1153:23-1154:13, 1156:5-1161:13.) As Ms. Exby argued, since failure to accommodate is itself an adverse employment action, to require an adverse employment action in addition to a failure to accommodate would require two adverse employment actions; "[i]n other words, the employer could simply fail to accommodate and there would be no action. That is not what the ADA intended." (*Id.* at 1161:22-1162:2.)

At the same oral argument, Defendant's counsel admitted he did not have a case that held that an adverse employment action is required in a failure to accommodate claim. (*Id.* at 1163:18-20.)

The District Court acknowledged the elements of a failure to accommodate claim as articulated in *Allen*, 455 F. App'x at 830 n.2, a case which the District Court itself identified; those elements do not include an adverse employment action. (Aplt. App. Vol. V p. 1155:3-11.) Yet, the court rejected the Tenth Circuit's articulation of the elements in *Allen* because in another case, *C.R. England*, the plaintiff was terminated, and therefore "the 10th Circuit's subsequent analysis that [Ms. Exby] focused on does not specifically address whether a reasonable accommodation could constitute an adverse employment action under

the ADA." (Id. at 1170:7-16, see also 172:13-16.)

The District Court reached this conclusion despite *C.R. England*'s holding that "Under ADA § 102(b)(5)(A), an employer can unlawfully 'discriminate' against an employee by failing to 'mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with an individual who is an . . . employee.'" *C.R. England*, 644 F.3d at 1048 (quoting 42 U.S.C. § 12112(b)(5)(A); other citations omitted). Instead, the District Court appeared confused by articulation of the elements of an ADA disparate treatment discrimination claim in the *C.R. England* case, (Aplt. App. Vol. V p. 1170:17-1171:18), which does require an adverse employment action "*generally*", *C.R. England*, 644 F.3d at 1038-39, and ignored that for a failure to accommodate claim, the failure to accommodate is itself the adverse employment action, so no additional adverse action is required, *C.R. England*, 644 F.3d at 1048.

As Ms. Exby articulated, (Aplt. App. Vol. V p. 1161:18-22, 1166:17-35, 1177:1-7), the pattern jury instructions from the Fifth, Seventh, and Eleventh Circuits for failure to accommodate do not include an adverse employment action element.[3] Plaintiff's counsel provided those pattern instructions to the District Court. Plaintiff offered two instructions and a separate verdict form that contained

---

[3] Even Defendants didn't think an adverse employment action was a required element of a failure to accommodate claim. No version of the Defendants' proffered jury instructions included an adverse employment action element in the failure to accommodate claim. (Aplt. App. Vol. I p. 176-77, 199-200.)

the correct elements. The court even discussed the Faculty of Federal Advocates'
instruction, which the court acknowledged does not contain an adverse
employment action element. (Aplt. App. Vol. V p. 1162:3-18 (citing Faculty of
Federal Advocates Ad Hoc Committee Model Employment Law Jury Instructions
for "Failure to Accommodate – Elements, p. 32 (Sept. 2013).) Plaintiff then
offered the Federal Advocates' instruction, but the court rejected it in favor of the
incorrect instructions and verdict form it eventually gave. (*Id.* at 1177:8-16,
1178:14-1179:2, 1179:21-1182:3.)

After the District Court ruled that the jury instructions would include an
adverse employment element, Ms. Exby requested at least that failure to
accommodate be included as an example of an adverse employment action in the
instruction for that term. (*Id.* at 1180:11-14, 1181:16-1182:3.) The District Court
refused that request as well, and the instruction on adverse employment does not
include failing to accommodate. (Aplt. App. Vol. II p. 449.)

The court insisted that it give a pattern instruction, but when Ms. Exby
explicitly argued the District Court should follow the sound logic of the Fifth,
Seventh, and Eleventh Circuits and presented their pattern instructions on a failure
to accommodate claim, the District Court rejected Ms. Exby's argument, stating
"but I am not in the Eleventh Circuit, whatever the other circuits you mentioned.
We are in the 10th Circuit and we have a pattern instruction in the 10th Circuit."

(Aplt. App. Vol. V p. 1166:17-1177:4.) But there is no pattern 10th Circuit instruction. (*Id.* 1166:21-25.) The pattern instruction the District Court apparently used was from O'Malley. The court then seemed to go backwards by saying "I am not wedded to the pattern instruction." (*Id.* at 1169:5-9.) The District Court then went on to rationalize its decision to include an adverse employment action element in its instruction by judging the disputed facts in the case: "it may be plaintiff was rash, emotional when she quit when she really didn't have to, but I don't know how that could be an adverse employment action." (*Id.* 1169: 13-16.)

### 5. The District Court's Erroneous Instruction on Failure to Accommodate Affected the Outcome of the Claim

The District Court's inclusion of an adverse employment action element in the failure to accommodate claim affected the outcome of the claim. The judgment of a trial court must be reversed "if the jury might have based its verdict on the erroneously given instruction." *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 867 (10th Cir. 2003) (internal quotation marks omitted). "The 'might have' threshold, as its language suggests, requires reversal 'even if that possibility is very unlikely.'" *Lederman*, 685 F.3d at 1159 (internal quotations and citations omitted).

Here, as the verdict form reveals, the jury's failure to find an adverse employment action was the reason for their verdict for Defendant. The jurors concluded Ms. Exby was disabled and that Ms. Exby was qualified for the job, meaning she could do the job with or without an accommodation. Had the jury

been properly instructed that Ms. Exby was discriminated against if the County failed to reasonably accommodate her, the jury likely would have found in her favor. Instead, they were asked to find an adverse employment action, which they did not because Ms. Exby was constructively discharged, *i.e.*, there's no "you're fired" email or document. Thus, remand is required because the jury might have based its verdict for Defendant on the erroneous instruction. *Level 7 Communications, LLC v. Liebert Corp.*, 535 F.3d 1146, 1161-62 (10th Cir. 2008). Here, there is evidence the jury actually based its verdict on the erroneous instruction.

The District Court's decision to instruct the jury that Ms. Exby had to prove she suffered an adverse employment action to succeed on her failure to accommodate claim was an abuse of discretion. The court's instructions to the jury on this claim were erroneous as a matter of law. This Court should reverse, vacate the jury's verdict, and remand for a new trial, with instructions to the District Court that a failure to accommodate claim does not require Ms. Exby to prove she suffered an adverse employment action, and that a failure to accommodate is itself an adverse employment action and constitutes discrimination.

### 6. Undue Hardship is an Affirmative Defense Defendant Never Alleged, and the District Court Erroneously Allocated the Burden of Proof on it to Plaintiff

Not only did the court err in its failure to accommodate instructions and

verdict form, but it erroneously refused to instruct the jury that undue hardship is an affirmative defense according to both the plain language of the ADA and the black-letter law of this Circuit. The ADA itself defines failure to accommodate as one type of disability discrimination "unless *such covered entity* can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A) (emphasis added). The Tenth Circuit has stated that undue hardship is an affirmative defense. *Hwayng v. Kan. State Univ.*, 753 F.3d 1159, 1163 (10th Cir. 2014) (noting that "an employer may pursue an undue hardship affirmative defense even when the plaintiff has met her burden of proof.") (citing 42 U.S.C. § 12112(b)(5)(A)). Other circuits agree. *E.g.*, *Woodruff v. Peters*, 482 F.3d 521, 527 (D.C. Cir. 2007). And the EEOC regulations under the ADA confirm undue hardship is an affirmative defense. 29 C.F.R. § 1630.15(d).

Despite this clear law, the District Court concluded, "I don't think this [undue hardship] is an affirmative defense. The only issue is whether or not there is evidence to support the Court giving it." (Aplt. App. Vol. V p. 1185:24-1186:1.) The District Court claimed its decision was correct because the case law Ms. Exby cited was in the summary judgment context and thus a burden-shifting analysis applied. (*Id.*) But the court's rationalization ignored the text of the statute and the law of this Circuit that clearly holds undue hardship is "one of the … affirmative

defenses available to the employer." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1179 (10th Cir. 1999). The District Court then gave the instruction without informing the jury that Defendant had the burden to prove any suggested reasonable accommodations would cause an undue hardship for the County.

Second, Defendant waived that affirmative defense having not pled in its Answers or asserted it in the Final Pretrial Order. An affirmative defense is waived if not pled. *E.g., Smith v. Secretary of N.M. Dep't of Corrections*, 50 F.3d 801, 821 n.30 (10th Cir. 1995). Defendant never alleged undue hardship as an affirmative defense in its answer. (Aplt. App. Vol. I p. 26-34.) Worse, during the pretrial conference, Defendant identified all affirmative defenses and did not identify undue burden among them. (Aplt. App. Vol. III p. 737:10-14.) And in the Final Pretrial Order, Defendant never identified undue hardship as an affirmative defense it would assert at trial. (Aplt. App. Vol. II p. 313-52.) The Final Pretrial Order controls the subsequent course of the trial. (*Id*. at 334.)

The District Court heard arguments on whether undue burden is an affirmative defense, and ruled, contrary to law, that it was not an affirmative defense.[4] (Aplt. App. Vol. V p. 1185:10-1190:6, 1194:11-1195:19.) Defendants

---

[4] Notably, the District Court had no problem providing an undue hardship instruction when Defendant's counsel admitted he was unsure the words "undue hardship" were ever used, even at trial, yet the District Court refused a constructive discharge instruction, when that was addressed extensively in the context of a forced resignation. (Aplt. App. Vol. V p. 1189:4-9.)

tendered, and the District Court accepted and provided to the jury, undue hardship instructions. (*Id.*) Instruction No. 24 defined undue hardship, and Instruction No. 22 stated "The term 'reasonable accommodation' does not include efforts that would cause an undue hardship on Defendant." (Aplt. App. Vol. II pp. 448, 450.) The District Court did not instruct the jury that it was Defendant's burden to demonstrate undue hardship.

The District Court's erroneous undue burden instruction misallocated the burden at trial. This was an abuse of discretion and an erroneous application of the law. On remand, this Court should instruct the District Court that undue hardship is an affirmative defense and instruct the court to either strike the affirmative defense because it was not pled or require the District Court to instruct the jury that Defendant has the burden to prove by a preponderance of the evidence that each suggested accommodation creates an undue hardship on Defendant.

**B.**    **The District Court Erred in Failing to Instruct the Jury on Constructive Discharge and Precluding Ms. Exby from Mentioning it at Trial**

Ms. Exby originally sought to proceed to trial on three theories of recovery under the ADA: (1) Defendant failed to engage in the interactive process, (2) failure to accommodate, and (3) discrimination resulting in constructive discharge. (Aplt. App. Vol. I p. 210-13.) The District Court ruled that failure to engage in the interactive process is not a claim, and Ms. Exby did not pursue it; that theory of recovery is not at issue on appeal. The District Court also ruled that Ms. Exby

could not assert constructive discharge at trial, or even mention it, and refused to instruct the jury on constructive discharge. That had the effect of precluding Ms. Exby from asserting her discrimination claim at trial. That was error. Ms. Exby was forced to proceed only on a failure to accommodate claim. But since the District Court erroneously included an adverse employment action as an element of the failure to accommodate claim, Ms. Exby was forced to try to establish an adverse employment action without being able to mention the one that existed in this case: constructive discharge. That too was error.

## 1. Standard of Review

In refusing to allow Ms. Exby to present a discrimination claim on a constructive discharge theory to the jury, the District Court effectively dismissed that claim. Trial court dismissals are reviewed de novo. *E.g., ClearOne Communications, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1171 (10th Cir. 2011) (ruling on motion to dismiss reviewed de novo); *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1253 (10th Cir. 2003) (grant of summary judgment reviewed de novo).

The District Court also refused Ms. Exby's proffered constructive discharge instruction. A district court's refusal to give a jury instruction is reviewed for abuse of discretion, but the question of whether the jury was properly instructed is reviewed de novo. *Lee*, 54 F.3d at 1536.

## 2. Issue Raised and Ruled Upon

At the March 31, 2016 Trial Preparation Conference, the District Court suggested that Ms. Exby had not pled constructive discharge and should be precluded from asserting it. (Aplt. App. Vol. II p. 503:12-507:11.) Ms. Exby argued that constructive discharge did not need to be separately pled and was encompassed within the termination and discharge alleged as part of the ADA discrimination claim. (*Id.*) The District Court disagreed and deleted mention of constructive discharge from the statement of the case and precluded Ms. Exby from asserting it. (*Id*. at 504:4-11.)

Ms. Exby tendered a jury instruction on constructive discharge, and the District Court refused it. (Aplt. App. Vol. V p. 1200:22-1202:10; Aplt. App. Vol. II p. 416.)

## 3. Constructive Discharge is Not a Stand-Alone Claim; it is a Form of Adverse Employment Action and No Magic Words are Required

Constructive discharge is a form of wrongful discharge; it does not need to be separately pled. In fact, it does not exist as a stand-alone claim and *cannot* be separately pled. *Huston v. Mittal Steel USA*, No. 2:06-cv-552, 2006 U.S. Dist. LEXIS 67323, at *10-12 (S.D. Ohio Sep. 20, 2006) (noting that "Courts have held that constructive discharge is not itself a cause of action, but rather a means of proving the element of an adverse employment action where the employee quits

instead of being fired") (citations omitted); *Wells v. City of Alexandria*, No. 03-30750, 2004 U.S. App. LEXIS 8525, at *9-10, 2004 WL 909735 (5th Cir. April 29, 2004) ("Under federal law, the constructive discharge doctrine is an alternative way of proving an adverse employment action in Title VII and other cases, but constructive discharge is not itself a cause of action. It is a means of proving the element of an adverse employment action where the employee quits instead of being fired."); *Starks v. New Par*, No. 98-1300, 1999 U.S. App. LEXIS 9145, at *15, 1999 WL 357757 (6th Cir. May 11, 1999) (constructive discharge "is not itself a cause of action."); *see also Bright v. Hill's Pet Nutrition, Inc.*, 342 F. App'x 208, 209 (7th Cir. 2009)(unpublished) (noting on state law claim that constructive discharge is not a distinct claim, but a theory about how the alleged sex discrimination caused harm); *Hughes v. Wal-Mart Stores E. LP*, No. 1:11 CV 400, 2013 U.S. Dist. LEXIS 86697, at *10 (N.D. Ind. June 20, 2013) ("constructive discharge is not a distinct claim; rather it is a theory about how discrimination caused harm to a plaintiff (i.e., the employee was harmed because she was forced to quit."));

Federal Rule of Civil Procedure 8 requires only a pleading, through a short and plain statement of the facts, provide a plausible set of facts that, if proved, could lead to recovery. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554-59 (2007). There are no "magic words" required to allege a theory of recovery. *E.g.*,

*Vanguard Recovery Assistance v. United States*, 99 Fed. Cl. 81, 95 (Fed. Cl. 2011) (stating that "the legal sufficiency of a complaint does not depend on whether or not the plaintiff invoked the right 'magic words,' but instead whether the facts as alleged may plausibly be construed to state a claim that meets the standard of RCFC 12(b)(6).") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### 4. Plaintiff Sufficiently Raised Constructive Discharge as Part of Her Discrimination Claim, But the District Court Improperly Precluded Her From Presenting It

Here, Ms. Exby pled that Defendant discriminated against her under the ADA when she was discharged. (Aplt. App. Vol. I pp. 22-24, ¶¶ 5, 9, 15, 17.) Defendant raised no objections to it. Ample discovery was devoted to the constructive discharge theory. And constructive discharge was addressed in the Motion for Summary Judgment pleadings. Defendant expressly argued that Ms. Exby resigned, not that she was forced out. (Aplt. App. Vol. I pp. 51-53.) Ms. Exby expressly argued that no, she was forced out. (*Id.* at 90-91.) While the District Court did not specifically address whether or not Ms. Exby was forced out, the District Court denied Defendant's Motion for Summary Judgment.

Ms. Exby also set forth her constructive discharge theory in the first pretrial conference order, noting that "[s]he was compelled by her department head to resign from her employment." (Aplt. App. Vol. I p. 147.)

After three years of litigating the constructive discharge claim, the court,

during a March 31, 2016 Trial Preparation Conference, said Ms. Exby had not pled constructive discharge and was precluded from asserting it. (Aplt. App. Vol. II p. 503:12-504:11.)  The District Court then deleted mention of constructive discharge from the statement of the case and precluded Ms. Exby from asserting the claim or even mentioning the words "constructive discharge." (*Id*. at 507:4-11.) At a subsequent September 7, 2016 Trial Preparation Conference, the District Court reiterated that it had ruled "that a constructive discharge had to be separately pled, before it could be asserted." (Aplt. App. Vol. III p. 687-17:19.)[5]

Ms. Exby-Stolley tendered a jury instruction on constructive discharge, and the District Court rejected it. (Aplt. App. Vol. V p. 1200:22-1202:10; Aplt. Vol. II p. 416.)  The District Court also precluded Ms. Exby-Stolley from mentioning constructive discharge. (Aplt. App. Vol. III p. 746:15-747:20.)

### 5. The District Court's Refusal of a Constructive Discharge Instruction Precluded Plaintiff from Showing an Adverse Employment Action for her Failure to Accommodate Claim

The District Court's rulings precluding Ms. Exby from arguing or even mentioning constructive discharge also directly affected her failure to

---

[5] The reason for the second pre-trial conference was the April 2016 trial date was vacated on the morning of the trial after Defendant disclosed a week before trial 300 pages of highly substantive emails that Plaintiff had requested back in September 2013 during discovery. Defendant then swore in a declaration to the court that it had produced all relevant documents. But Defendant, after Plaintiff was forced to file a follow-up sanctions motion, produced another 7,000 pages of relevant emails.

accommodate claim under the erroneous instruction the court gave for that claim. Constructive discharge should have had no relevance to Ms. Exby's failure to accommodate claim. But when the District Court erroneously instructed the jury that an adverse employment action is an element of a failure to accommodate claim, constructive discharge not only became relevant, but critical—the constructive discharge was the most clear and understandable adverse employment action that Ms. Exby could show. The District Court wrongfully required Ms. Exby to prove an adverse employment action in her failure to accommodate claim, then compounded that error by precluding the jury from even hearing about the critical adverse employment action—constructive discharge.

### 6. The District Court's Dismissal of Plaintiff's Discrimination Claim on a Constructive Discharge Theory and Refusal of a Constructive Discharge Instruction Were Not Harmless

Because the District Court precluded Ms. Exby from mentioning constructive discharge, she could not assert her discrimination claim at trial. This had the effect of granting judgment in favor of Defendant on that claim. Ms. Exby was barred from recovering on her ADA discrimination claim, leaving only her failure to accommodate claim.

But by precluding Ms. Exby from mentioning constructive discharge and refusing to instruct the jury on it, the District Court also affected the failure to accommodate claim. Ms. Exby was unable to present to the jury the most easily

understood example of an adverse employment action, the constructive discharge, which the District Court wrongfully required her to prove on her failure to accommodate claim. Because this error not only could have affected the verdict, but did, reversal and remand is required. *Wankier*, 353 F.3d at 867; *Level 7 Communications*, 535 F.3d at 1161-62.

## VIII.    CONCLUSION

The District Court inserted an element which does not exit—an adverse employment action—into Ms. Exby's failure to accommodate claim. That was contrary to well-established Tenth Circuit law, the law of virtually every other Circuit, and the plain language of the ADA. The jury found for the County on that erroneously included element. The District Court then compounded that error by precluding Ms. Exby from mentioning constructive discharge at trial or instructing the jury on the concept. As a result, Ms. Exby was precluded from proving an element she should not have had to prove in the first place. Moreover, Ms. Exby was unable to pursue her discrimination theory once the District Court precluded any mention of constructive discharge.

The District Court's actions constituted plain legal error and were the reason Ms. Exby lost at trial. This Court should reverse and remand.

Plaintiff specifically requests the Court order and instruct as follows:

1)    Vacate the jury's verdict and remand for a new trial;

2)      Order that the elements for a claim for failure to accommodate under the ADA are a) Plaintiff is a qualified individual with a disability; b) the employer was aware of the disability; and c) the employer failed to reasonably accommodate the disability;

3)      Order that an adverse employment action is not an element of a failure to accommodate claim;

4)      Order that whether an accommodation creates an undue burden/hardship for an employer is an affirmative defense that must be pled and the employer must prove undue hardship by a preponderance of the evidence;

5)      Instruct the District Court to strike Defendant's undue hardship defense because it was not pled and was waived in the Pretrial Order;

6)      Instruct the District Court to reinstate Plaintiff's discrimination claim and permit her to proceed on a constructive discharge theory; and

7)      Order that the words "constructive discharge" need not be pled to assert a discrimination claim under the ADA through a constructive discharge theory.

## REQUEST FOR ORAL ARGUMENT

Plaintiff requests oral argument in this matter in order to assist the Court in deciphering the complicated and convoluted procedural history of this case, and how the District Court received and ruled upon the applicable law.  While the legal

basis for Ms. Exby's appeal is clear, the history of this case before the District Court is not.  The procedural history, and the context and timing of the District Court's rulings, directly bears on the issues on appeal.  Ms. Exby has endeavored to articulate the proceedings at the trial court level, but oral argument will permit the parties to put it better context.

Respectfully submitted this 7th day of April, 2017.

DARLING MILLIGAN HOROWITZ PC

*/s/ Jason B. Wesoky*
Jason B. Wesoky
1331 17th Street, Suite 800
Denver, CO 80202
Phone:          (303) 623-9133
Fax:              (303) 623-9129
Email:          jwesoky@dmhlaw.net

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that: 1) all required privacy redactions have been made; 2) the ECF submission is an exact copy of any hard copies that were filed (if any); and 3) the digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Microsoft Security Essentials, Virus definition version 1.239.1016.0, dated April 7, 2017, and according to the program are free from viruses. I further certify that the information on this form is true and correct to the best of my ability and belief formed after a reasonable inquiry.

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this Opening Brief of Appellant complies with the word limitation set forth in Rule 32(a)(7)(B)(i). According to the word-processing system used to prepare this brief, MSWord 2010, the word count for this brief, excluding the Corporate Disclosure Statement, the Table of Contents, the Table of Authorities, and the certificates of counsel (*See* Fed. R. App. P. 32(a)(7)(iii)) is 10,760.

*/s/ Jason B. Wesoky*
Jason B. Wesoky

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of April, 2017 a true and correct copy of the foregoing **OPENING BRIEF OF PLAINTIFF-APPELLANT** was filed with the Court and served via CM/ECF on the following:

> Alan Epstein
> Matthew J. Hegarty
> Thomas J. Lyons
> Mark S. Rater
> HALL & EVANS, L.L.C.
> 1001 17th Street, Suite 300
> Denver, CO 80202
> *Attorneys for Defendant-Appellee*

*/s/ Audrey Dakan*
Audrey Dakan, Paralegal