# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

LAURIE EXBY-STOLLEY,

    Plaintiff – Appellant,

v.

    Case No. 16-1412

BOARD OF COUNTY COMMISSIONERS
WELD COUNTY, COLORADO,

    Defendant – Appellee.

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT

---

Bruce G. Smith
Jason B. Wesoky
DARLING MILLIGAN HOROWITZ PC
1331 17th Street, Suite 800
Denver, CO 80202
Phone:    (303) 623-9133
Fax:    (303) 623-9129
Email:    bsmith@dmhlaw.net
        jwesoky@dmhlaw.net

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

I.    INTRODUCTION .........................................................................................1

II.   ARGUMENT..............................................................................................3

      A.    Adverse Employment Action is not an Element of a Failure to
            Accommodate Claim and the District Court Erred in Instructing
            Otherwise ..................................................................................3

            1.    Binding Tenth Circuit Law Holds That an Adverse
                  Employment Action is Not an Element of a Failure to
                  Accommodate Claim.................................................................3

            2.    The Plain Language of the ADA Supports Tenth Circuit
                  Law that No Adverse Employment Action Element is
                  Required.....................................................................................9

            3.    Nearly Every Circuit is Consistent with the Tenth Circuit 10

            4.    Defendant Agreed That Failure to Accommodate Does Not
                  Require an Adverse Employment Action, Until the
                  District Court Suggested, on the Third Day of Trial, That
                  it Does ......................................................................................12

            5.    The District Court's Erroneous Instruction and Verdict
                  Form on Failure to Accommodate Adversely Affected the
                  Outcome of the Case ...............................................................14

      B.    The District Court Erred by Allocating the Burden of
            Defendant's Unalleged Undue Hardship Affirmative Defense to
            Ms. Exby.........................................................................................17

            1.    Undue Hardship is an Affirmative Defense the Defendant
                  Must Plead ...............................................................................17

            2.    The District Court Improperly Instructed the Jury on
                  Undue Hardship and Created Confusion .............................18

**C.** **The District Court Erroneously Failed to Instruct the Jury on Constructive Discharge and Precluded Ms. Exby from Mentioning It, Denying Her Ability to Assert a Discrimination Claim, and Compounding its Error on Failure to Accommodate 19**

**III.** **CONCLUSION** ............................................................................ **25**

# TABLE OF AUTHORITIES

**Cases**

*Allen v. SouthCrest Hosp.*, 455 F. App'x 827 (10th Cir. 2011) ...................... 3, 8, 9

*Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906 (10th Cir. 2004) ...............................3

*Bragdon v. Abbott*, 524 U.S. 624, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998).........7

*Bristol v. Bd. of Cty. Comm'rs of Clear Creek*, 281 F.3d 1148 (10th Cir. 2002)......3

*Butler v. City of Prairie Village, Kan.*, 172 F.3d 736 (10th Cir. 1999).................4, 8

*Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214 (5th Cir. 2015) ...............................................................................................................10

*Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17 (1st Cir. 2011) ............11

*Colwell v. Rite Aid Corp.*, 602 F.3d 495 (3d Cir. 2010)..........................................10

*EEOC v. AutoZone, Inc.*, 630 F.3d 635 (7th Cir. 2010) .......................... 7, 8, 10, 11

*EEOC v. C.R. England, Inc.*, 644 F.3d 1028 (10th Cir. 2011) ........................ passim

*EEOC v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127 (1st Cir. 2014) ................... 10, 11

*EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789 (7th Cir. 2005) ................................8

*Felkins v. City of Lakewood*, 774 F.3d 647 (10th Cir. 2014) ...............................4, 8

*Foster v. Arthur Andersen, LLP*, 168 F.3d 1029 (7th Cir. 1999) ...........................11

*Gorbea v. Verizon New York, Inc.*, 2014 U.S. Dist. LEXIS 87295 (E.D.N.Y. 2014) ...........................................................................................................................17

*Green v. JP Morgan Chase Bank Nat'l Ass'n*, 501 Fed Appx. 727 (10th Cir. 2012) ...........................................................................................................................20

*Hwang v. Kan. State Univ.*, 753 F.3d 1159 (10th Cir. 2014) ..................................17

iv

*Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974 (6th Cir. 2011) ...............10

*Jones v. Barnhart*, 349 F.3d 1260 (10th Cir. 2003)......................................... 22, 24

*Kotwica v. Rose Packing Co.*, 637 F.3d 744 (7th Cir. 2011)................................3, 8

*Lederman v. Frontier Fire Prot. Inc.*, 685 F.3d 1151 (10th Cir. 2012) .................15

*Level 7 Communications, LLC v. Liebert Corp.*, 535 F.3d 1146 (10th Cir. 2008...15

*Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249 (11th Cir. 2001) ..............................10

*Martinsky v. City of Bridgeport,* 504 F. App'x 43 (2d Cir. 2012)...........................10

*Mathews v. Denver Post*, 263 F.3d 1164 (10th Cir. 2001) ....................................4, 8

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92 (2nd Cir. 2009).............11

*Mzyk v. N.E. Indep. Sch. Dist.*, 397 F. App'x 13 (5th Cir. 2010) (unpublished).....10

*Parker v. Sony Pictures Entertainment, Inc.*, 260 F.3d 100 (2nd Cir. 2001) ..........11

*Rhoads v. FDIC*, 257 F.3d 373 (4th Cir. 2001) ......................................................10

*Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249 (10th Cir. 2001).........................3

*Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999)................................3

*Smith v. Secretary of N.M. Dep't of Corrections*, 50 F.3d 801 (10th Cir. 1995) ....17

*Spielman v. Blue Cross & Blue Shield of Kan., Inc.*, 33 Fed. Appx. 439 (10th Cir. 2002) ...................................................................................................................3

*Wankier v. Crown Equip. Corp.*, 353 F.3d 862 (10th Cir. 2003) ...........................15

**Statutes**

42 U.S.C. § 12112(a) ................................................................................................9

42 U.S.C. § 12112(b)(5)(A)......................................................................................9

42 U.S.C. § 1981 ..................................................................................20

42 U.S.C. § 102(b)(5)(A) .........................................................................6

**Other Authorities**

*Eleventh Circuit Civil Pattern Jury Instructions* 4.12 .............................................12

*Federal Jury Instructions of the Seventh Circuit* 4:03.............................................12

*Federal Jury Practice and Instructions*, § 171.21 (6th Ed. 2014)...........................12

*Modern Federal Jury Instructions* (2017) ...............................................................12

*Pattern Jury Instructions (Civil Cases) Fifth Circuit* 11:10....................................12

# I.     INTRODUCTION

The District Court's errors of law deprived Plaintiff of her theory of the case. Instead of Plaintiff presenting a failure to accommodate claim and a constructive discharge claim, the court barred Plaintiff from asserting she was constructively discharged—despite the fact that the parties had litigated the issue and the first Final Pre-trial Order included the claim—and then required her to prove in her failure to accommodate claim that she suffered an adverse employment action such as discharge.

The ADA itself and the law of this Circuit are clear: an adverse employment action is not an element of a failure to accommodate claim. The reason is simple; an employer's failure to accommodate is, by definition, discrimination under the ADA. Requiring a plaintiff to prove another act of discrimination, such as discharge, would render the ADA's prohibition on failure to accommodate superfluous. Even when the District Court was presented with the opportunity to instruct the jury that the definition of an adverse employment action includes the failure to accommodate, the court refused to do so. At every turn, the court erred in its instructions on failure to accommodate, requiring this Court to reverse and remand for a new trial.

The District Court's errors on failure to accommodate were compounded by its refusal to permit Plaintiff to assert her constructive discharge claim. When the District Court required Plaintiff to prove, as an element of her failure to accommodate claim, that she suffered an adverse employment action, Plaintiff could have done so through her constructive discharge claim. But the court precluded Plaintiff from even using the phrase constructive discharge, despite the fact that she had pled discharge in her complaint and the parties had litigated the constructive discharge claim throughout the case, including discovery, summary judgment, and jury instructions.

This Court must remand for a new trial in which Plaintiff can assert her failure to accommodate claim under the proper elements, and assert a claim of constructive discharge.[1]

---

[1] Defendant takes issue with Plaintiff's recitation of the facts and procedural history of this case, which includes sanctions against Defendant for discovery/disclosure issues. This information is necessary to explain the timeline of this case, why trial was reset so many times, and why there are so many versions of the Final Pre-trial Order and the parties' proposed jury instructions. Defendant's complaint that Plaintiff should have omitted bad facts runs counter to the requirements of candor to the tribunal and the need to provide all relevant procedural and factual background.

## II.     ARGUMENT

**A.     Adverse Employment Action is not an Element of a Failure to Accommodate Claim and the District Court Erred in Instructing Otherwise**

### 1.     Binding Tenth Circuit Law Holds That an Adverse Employment Action is Not an Element of a Failure to Accommodate Claim

This Court has repeatedly held, on at least seven occasions, that an adverse employment action is not required to prove failure to accommodate under the ADA. The seven different Tenth Circuit cases Ms. Exby cites in her Opening Brief are conclusive (Appellant's Br. At 24-25),[2] and Defendant fails to address all but one of them. Instead, Defendant uses the same erroneous analysis the lower court utilized: assuming that the general test for discrimination, which requires proof of discrimination, can only be satisfied by showing an adverse employment action. In fact, discrimination can be shown by a failure to accommodate.

---

[2] *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1048 (10th Cir. 2011); *Bristol v. Bd. of Cty. Comm'rs of Clear Creek*, 281 F.3d 1148, 1164 (10th Cir. 2002); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1169, 1179 (10th Cir. 1999); *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 830 n.2 (10th Cir. 2011) (unpublished) (quoting *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 747-48 (7th Cir. 2011)); *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912 n.4 (10th Cir. 2004); *Spielman v. Blue Cross & Blue Shield of Kan., Inc.*, 33 Fed. Appx. 439, 443 (10th Cir. 2002) (unpublished); *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001).

When the District Court assumed that disability discrimination could only be shown through proof of an adverse employment action, it ignored the very concept of a failure to accommodate claim and improperly included an adverse employment action element in Plaintiff's failure to accommodate claim. (Opening Br. 29-30.)

The elements of a general disability discrimination claim are not at issue here. There is no dispute that a plaintiff must show he or she suffered discrimination as part of a general disability discrimination claim. (Appellee's Br. 9 (citing *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014); *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011); *Mathews v. Denver Post*, 263 F.3d 1164, 1167 (10th Cir. 2001); *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 748 (10th Cir. 1999)). The umbrella of "disability discrimination" covers many different types of ADA claims, including, for example, disparate treatment, which requires an adverse employment action because such action is the proof of discrimination. The question on appeal is how a plaintiff, in a failure to accommodate claim, proves she was discriminated against. ***In a failure to accommodate claim, no adverse employment action is required to show discrimination because failure to accommodate is discrimination***.

The Tenth Circuit cases Ms. Exby cites definitively show that the failure to accommodate is discrimination and no additional adverse employment action is required. For example, the *C.R. England* case, upon which both parties rely, elucidates this distinction clearly and was binding on the District Court. In that case, the plaintiff alleged several kinds of discrimination under the ADA: 1) disparate treatment, 2) failure to provide reasonable accommodation, and 3) retaliation. *C.R. England*, 644 F.3d at 1035, 1036. The Court began its discussion of the plaintiff's ADA discrimination claims by providing the umbrella recitation of the elements of an ADA discrimination claim, which require a plaintiff prove he or she is disabled, is qualified to do the job with or without an accommodation, and "suffered discrimination … because of that disability." *Id.* at 1037-1046. The *C.R. England* Court then said that for a plaintiff to prove discrimination, "**generally**" the plaintiff must show "an adverse employment action." *Id.* (emphasis added).

An adverse employment action is "generally" required because, without it, in a disparate treatment or retaliation claim, there is no way to determine whether the disabled plaintiff has been discriminated against. How else could someone show he or she was treated differently or retaliated against unless something bad happened to him or her? But, the ADA specifically defines discrimination to also include a failure to accommodate. 42 U.S.C. § 12112(b)(5)(A) ("the term

'discriminate against a qualified individual on the basis of disability' includes …
not making reasonable accommodations to the known physical or mental
limitations of an otherwise qualified individual with a disability").

In *C.R. England*, the Court addressed the discrete and specific discrimination
claims under subheadings and did not impose the "generally" required adverse
employment action on the failure to accommodate claim. The Court first addressed
the plaintiff's disparate treatment claim and specifically noted that such claims are
limited to employer actions that "adversely affect" an employee. *Id.* at 1040. The
Court then provided a detailed discussion of what the liberal definition of adverse
employment action means. *Id.* at 1040-41. Then the Court addressed the plaintiff's
discriminatory termination claim, which required a discussion of what constitutes
pretextual reasons for adverse employment actions. *Id.* at 1042-46.

The Court then turned to the failure to accommodate claim, 11 pages after
articulating the general standard for disability discrimination. *Id.* at 1048. But
when the Court discussed the failure to accommodate claim, it did not discuss
adverse employment action. Instead, it said:

> Under the ADA § 102(b)(5)(A), an employer can unlawfully
> "discriminate" against an employee by failing to make reasonable
> accommodations to the known physical or mental limitations of an
> otherwise qualified individual with a disability who is an employee.
> **The statute thus establishes a cause of action for disabled**

**employees whose employers fail to reasonably accommodate them**.

*Id.* at 1048 (emphasis added). The Court does *not* mention any adverse employment action element in its discussion of the failure to accommodate claim because none is required—the failure to accommodate is the discriminatory act that satisfies the third element of the general disability discrimination *prima facie* case. Indeed, as the Court said, the ADA itself defines discrimination to include the failure to accommodate. *Id.*

The District Court's confusion between disability discrimination "generally" being proved by adverse employment action, and the specific elements of a failure to accommodate claim, was addressed head-on by the Seventh Circuit in *EEOC v. AutoZone, Inc.*, 630 F.3d 635, 638 n.1 (7th Cir. 2010):

> The district court correctly identified the components of the reasonable accommodation test in the first part of its decision, citing the three-step inquiry outlined by the Supreme Court in *Bragdon v. Abbott*, 524 U.S. 624, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998). When applying the facts to the law, however, the court appears to have mistakenly applied an element of the disparate treatment test as part of its evaluation of reasonable accommodation. The court strayed from the reasonable accommodation test it had identified by requiring that the EEOC demonstrate an adverse employment action against Shepherd. **No adverse employment action is required to prove a failure to accommodate.**

(emphasis added; citations omitted).

The District Court made *exactly* the same mistake here. (Opening Br. 29-30).[3] Neither the District Court's confusion nor Defendant's endorsement of it change binding Tenth Circuit law: an adverse employment action is not an element of a failure to accommodate claim. Defendant argues that the Tenth Circuit "has simply never addressed the issue [of whether an adverse employment action is required] in the specific context of a reasonable accommodation claim." (Appellee's Br. 11.) That is false. The Tenth Circuit cases Ms. Exby cites here and in her Opening Brief, all address that issue. In *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 830 n.2 (10th Cir. 2011), which quoted the Seventh Circuit,[4] this Court could not have been more clear:

> In order to establish a prima facie case of failure to accommodate in accordance with the ADA, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of

---

[3] The Tenth Circuit cases Defendant cites (Appellee's Br. 9) also refer to the general disability discrimination elements without addressing the specific elements of failure to accommodate. *Felkins v. City of Lakewood*, 774 F.3d at 650; *Mathews v. Denver Post*, 263 F.3d at 1167. And in *Butler v. City of Prairie Village, Kan.*, 172 F.3d at 747-52, the final case Defendant cites (Appellee's Br. 9), the plaintiff appealed an ADA disparate treatment discrimination claim and retaliation claim, not a failure to accommodate claim.

[4] The Seventh Circuit case that was quoted in *Allen*, *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 748 (7th Cir. 2011), itself was quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005), which is part of the line of cases that the Seventh Circuit in *EEOC v. Autozone* relied on to conclude no adverse employment action is required to prove a failure to accommodate claim.

her disability; and (3) the employer failed to reasonably accommodate
the disability.

(quotation and citation omitted).[5] In the Tenth Circuit, there is no adverse

employment action element in a failure to accommodate claim, contrary to the

District Court's instruction.

### 2. The Plain Language of the ADA Supports Tenth Circuit Law that No Adverse Employment Action Element is Required

The ADA prohibits discrimination against people with disabilities. 42

U.S.C. § 12112(a). Then it defines "discrimination" to include:

> Not making reasonable accommodations to the known physical or
> mental limitations of an otherwise qualified individual with a
> disability who is an applicant or employee, unless such covered entity
> can demonstrate that the accommodation would impose an undue
> hardship on the operation of the business of such covered entity[.]

42 U.S.C. § 12112(b)(5)(A). Thus, it generally prohibits discrimination, and in the

context of a failure to accommodate claim, defines discrimination to include an

employer's failure to accommodate. In other words, this Section prohibits failure to

accommodate because it is a form of discrimination, without requiring any

additional discriminatory act. If it were otherwise, an employer would always be

free to refuse to accommodate a disabled employee so long as the employer did not

---

[5] In *Allen*, the Court also distinguished between a general disability discrimination
case resulting in termination, and a failure to accommodate claim, setting forth
the elements for both claims. 455 F. App'x at 830 n.2.

fire or demote that employee. That is not how the ADA works. Disabled employees are not expected to suffer in order to retain their jobs when their employers could make reasonable changes allowing disabled employees to experience tolerable work environments similar to what their non-disabled coworkers enjoy. The ADA requires an affirmative attempt to accommodate where possible.

The plain language of the ADA precludes the District Court's conclusion that discrimination in a failure to accommodate claim must be proven through an adverse employment action.

### 3. Nearly Every Circuit is Consistent with the Tenth Circuit

Eight of the twelve circuits have held no adverse employment action is required for a failure to accommodate claim.[6] (Appellant's Br. 25-27.) In its Brief,

---

[6] *See EEOC v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 131 (1st Cir. 2014); *Martinsky v. City of Bridgeport,* 504 F. App'x 43, 47 (2d Cir. 2012) (unpublished); *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503-04 (3d Cir. 2010) (noting that refusing to accommodate disability is an adverse employment action); *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001); *Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015) (unpublished); *Mzyk v. N.E. Indep. Sch. Dist.*, 397 F. App'x 13, 16 n.3 (5th Cir. 2010) (unpublished); *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011) (unpublished); *EEOC v. AutoZone, Inc.*, 630 F.3d 635, 638 n.1 (7th Cir. 2010); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).

Defendant primarily relies on circuits that represent the minority view.[7] Defendant also cites majority circuits, but only cases that pre-date, and appear to have been overruled by, later cases in the same circuit that clearly hold no adverse employment action is required. For example, on page 13 Defendant cites *Parker v. Sony Pictures Entertainment, Inc.*, 260 F.3d 100, 108 (2nd Cir. 2001), but eight years later, the Second Circuit in *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96-97 (2nd Cir. 2009) set forth the elements of a failure to accommodate claim, which excluded an adverse employment action element. Also on page 13, Defendant cites *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1033-34 (7th Cir. 1999), but eleven years later the Seventh Circuit in *EEOC v. AutoZone, Inc.*, 630 F.3d 635, 638 n.1 (7th Cir. 2010) expressly stated that "[n]o adverse employment action is required to prove a failure to accommodate."[8]

---

[7] *E.g., Fenney v. Dakota, Minnesota & RR Co.*, 327 F.3d 707, 711 (8th Cir. 2003); *Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1099 (D.C. Cir. 1997); *Samper v. Providence St. Vincent Med. Center*, 675 F.3d 1233, 1237 (9th Cir. 2012).

[8] Other examples: *Compare Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 32 (1st Cir. 2011) (cited by Defendant at Appellee's Br. 14; articulating general disability discrimination standard rather than specific failure to accommodate standard) *with EEOC v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 131 (1st Cir. 2014) (cited by Ms. Exby Opening Br. 26; later case that articulates elements of failure to accommodate claim with no adverse employment action element).

Of Circuits with pattern jury instructions, the majority also articulate the elements of failure to accommodate without an adverse employment action element. *Pattern Jury Instructions (Civil Cases) Fifth Circuit* 11:10; *Federal Jury Instructions of the Seventh Circuit* 4:03; *Eleventh Circuit Civil Pattern Jury Instructions* 4.12. Defendant, however, focuses on two general pattern jury instructions that are inconsistent with the majority view, O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, § 171.21 (6th Ed. 2014), and L. Sand, et al., *Modern Federal Jury Instructions* (2017). (Appellee's Br. 12.) The District Court below relied on the O'Malley instruction at the expense of Tenth Circuit law. That the Tenth Circuit has occasionally relied on the O'Malley or Sand instructions for other kinds of claims does not eliminate the District Court's error. In this instance, the O'Malley instruction the District Court relied on is inconsistent with the law of this Circuit, the language of the ADA, and the majority view on failure to accommodate.

### 4. Defendant Agreed That Failure to Accommodate Does Not Require an Adverse Employment Action, Until the District Court Suggested, on the Third Day of Trial, That it Does

Prior to the third day of trial, when the District Court submitted its own draft jury instructions, Defendant never asserted the failure to accommodate claim included an adverse employment action element. On 12 different occasions,

Defendant had the opportunity to assert adverse employment action as an element.

In every instance, it did not.

- Defendant's May 18, 2015 proposed jury instruction for failure to accommodate did not include an adverse employment action as an element. (Aplt. App. Vol. I p. 176.)

- Defendant's proposed verdict form from the same day did not ask the jury whether Ms. Exby had suffered an adverse employment action. (Aplt. App. Vol. I p. 188-190.)

- Defendant's May 22, 2015 objections to Ms. Exby's disputed jury instructions and stipulated instructions, did not include an objection to the lack of an adverse employment action in Ms. Exby's disputed reasonable accommodation instruction. (Aplt. App. Vol. I p. 191-196.)

- Defendant's April 11, 2016 amended proposed instructions did not include an adverse employment action as an element of the failure to accommodate claim. (Aplt. App. Vol. I p. 199-200.)

- Defendant's Second Amended Proposed Verdict Form, filed the same day, did not mention adverse employment action. (Id. at 201-04.)

- The parties' Stipulated Jury Instructions filed on April 11, 2016 identified failure to accommodate as a form of prohibited discrimination under the ADA. (Aplt. App. Vol. I p. 216.)

- Defendant did not identify an adverse employment action as an element of the failure to accommodate claim in its Third Amended Disputed Jury Instructions on April 24, 2016. (Aplt. App. Vol. I p. 250.)

- Defendant's instruction defining discrimination included failure to accommodate as an act of discrimination. (Id. at 252.)

- Defendant's September 22, 2016 Fourth Amended Disputed Jury Instructions did not include an adverse employment action element in the failure to accommodate claim. (Aplt. App. Vol. II p. 354-55.)

- Defendant did not object to Ms. Exby's September 26, 2016 Disputed Jury Instructions, which included failure to accommodate among the examples of discrimination in the instruction defining discrimination

under the ADA, and did not include an adverse employment action as an element of the failure to accommodate claim. (Aplt. App. Vol. II p. 359-66; 367-73.)

- Defendant did not include an adverse employment action as an element of the failure to accommodate claim in its September 29, 2016 Fifth Amended Disputed Instructions. (Aplt. App. Vol. II p. 375-76.)

- Defendant defined discrimination to include a failure to accommodate. (*Id.* at 377.)

On the third day of trial, October 4, 2016, the District Court provided its proposed instructions, which included, for the first time, an adverse employment action as an element of the failure to accommodate claim. It was only then that Defendant started taking the position that failure to accommodate requires an adverse employment action. As its position throughout the litigation, all the way through the third day of trial, indicates, Defendant agrees there is no adverse employment action element in a failure to accommodate claim.

5.    **The District Court's Erroneous Instruction and Verdict Form on Failure to Accommodate Adversely Affected the Outcome of the Case**

Defendant theorizes that the jury "could have found" against Ms. Exby because they interpreted "failure to accommodate" as "another adverse employment action" in the instruction, or could have simply found that the County introduced evidence showing no failure to accommodate. (Appellee's Br. 10-11.) That is not the standard. Rather, the judgment of a trial court must be reversed "if

14

the jury *might have* based its verdict on the erroneously given instruction." *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 867 (10th Cir. 2003) (internal quotation marks omitted) (emphasis added). "The 'might have' threshold, as its language suggests, requires reversal 'even if that possibility is very unlikely.'" *Lederman v. Frontier Fire Prot. Inc.*, 685 F.3d 1151, 1159 (10th Cir. 2012) (internal quotations and citations omitted).

Here, the District Court instructed the jury that in order to find in favor of Plaintiff, it must find "Plaintiff was discharged from employment or suffered another adverse employment action by Defendant." (Aplt. App. Vol. II p. 419, 440-42, 448.) The verdict form the District Court adopted and gave to the jury asked whether Ms. Exby had proven she was discharged, not promoted, or suffered another adverse employment action in order to recover on her failure to accommodate claim. (Aplt. App. Vol. II p. 419.) The jury ultimately found against Ms. Exby, noting that while Ms. Exby proved she was disabled and a qualified individual with a disability, she had not proven an adverse employment action. (Aplt. App. Vol. II p. 462-63.) Remand is required because the jury not only "might have" based its verdict for Defendant on the erroneous instruction, it did. *Level 7 Communications, LLC v. Liebert Corp.*, 535 F.3d 1146, 1161-62 (10th Cir. 2008).

Defendant's argument that the inclusion of Plaintiff's examples of Defendant's failures to accommodate in Instruction 16 eliminates any error in the elements of the claim fails. Once the District Court decided to provide the jury with the incorrect elements of a failure to accommodate claim, the remainder of Instruction 16 made no sense. What does it matter that Plaintiff asserted Defendant failed to accommodate her by not reassigning Plaintiff if "failure to accommodate" is not an element of the claim? Moreover, the verdict form made clear that the only thing that mattered was whether Plaintiff proved an adverse employment action. And, the District Court's refusal to include "failure to provide a reasonable accommodation" as an example of "adverse employment action" in Instruction 11 (Aplt. App. Vol. II p. 403) doubled-down on the court's error and was the *fait accompli* that ensured Plaintiff's defeat.

The District Court's combined errors in refusing Plaintiff's tendered Instruction 11, instructing the jury that an adverse employment action was required to prove disability discrimination in a failure to accommodate claim, and its verdict form that eliminated "failure to accommodate" as an element, demand the Court remand for new trial.

**B.** **The District Court Erred by Allocating the Burden of Defendant's Unalleged Undue Hardship Affirmative Defense to Ms. Exby**

      **1.** **Undue Hardship is an Affirmative Defense the Defendant Must Plead**

Defendant concedes, as it must, that undue hardship is an affirmative defense. (Appellee's Br. 16); *Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1163 (10th Cir. 2014). Defendant then cites an unpublished Second Circuit case, *Gorbea v. Verizon New York, Inc.*, 2014 U.S. Dist. LEXIS 87295 (E.D.N.Y. 2014), to argue that it need not have alleged undue hardship to assert it. (Appellee's Br. 16-17.) In the Tenth Circuit, an affirmative defense is waived if not pled. *E.g.*, *Smith v. Secretary of N.M. Dep't of Corrections*, 50 F.3d 801, 821 n.30 (10th Cir. 1995).

Defendant argues it did plead undue hardship in its answer by alleging "[a]ll actions taken by Defendant with respect to Plaintiff's employment were…taken…for legitimate business reasons." (Appellee Br. 17-18 (citing Aplt. App., Vol. I at 31).) As an initial matter, and as discussed further below, if Defendant alleging its actions were taken for "legitimate business reasons" is enough to allege an undue burden affirmative defense, there can be no dispute that Ms. Exby's allegations of "discharge" and "termination" were enough to allege constructive discharge, particularly when constructive discharge was at issue through discovery and pretrial orders.

But Defendant did not just fail to allege undue hardship in its answer. For the originally scheduled trial, the District Court entered a Final Pretrial Order that did not include undue burden. (Aplt. App. Vol. I p. 149-51.) During the pretrial conference, Defendant identified all affirmative defenses and did not identify undue burden among them. (Aplt. App. Vol. III p. 737:10-14.) And in the Final Pretrial Order that governed the actual trial in this case, Defendant never identified undue hardship as an affirmative defense it would assert at trial. (Aplt. App. Vol. II p. 313-52.) On September 7, 2016, the District Court entered the Amended Final Pretrial Order which did not identify undue hardship as one of the defenses. (Aplt. App. Vol. II p. 321-23.) During the pretrial conference the first day of trial on September 30, 2016, Defendant identified all affirmative defenses and did not identify undue burden among them. (Aplt. App. Vol. III p. 737:10-14.). Thus, Defendant failed to plead the defense and waived it entirely.

2. **The District Court Improperly Instructed the Jury on Undue Hardship and Created Confusion**

Instruction No. 24 defined undue hardship, and Instruction No. 22 stated "The term 'reasonable accommodation' does not include efforts that would cause an undue hardship on Defendant." (Aplt. App. Vol. II pp. 448, 450.) The District Court did not instruct the jury that it was Defendant's burden to demonstrate undue hardship. While the special verdict form asked the jury whether Defendant had

proven undue burden by a preponderance of the evidence (Aplt. App., Vol. II p. 420), the damage was already done—the jury had already heard instruction No. 22, which implied the burden rested with Ms. Exby.

Defendant asserts review is for harmless error, and argues the error must be harmless because the jury never reached this issue. If this case is remanded and Defendant is permitted to assert undue burden, despite having repeatedly waived that defense, this Court should ensure the District Court correctly instructs the jury that Defendant has the burden of proof on this affirmative defense. Otherwise, the parties may find themselves in this Court again on that issue.

C. **The District Court Erroneously Failed to Instruct the Jury on Constructive Discharge and Precluded Ms. Exby from Mentioning It, Denying Her Ability to Assert a Discrimination Claim, and Compounding its Error on Failure to Accommodate**

Ms. Exby pled that Defendant discriminated against her under the ADA when she was discharged. (Aplt. App. Vol. I pp. 22-24, ¶¶ 5, 9, 15, 17.) That was sufficient to bring a constructive discharge claim because constructive discharge is not a claim that must be separately pled (Appellant's Br. 38-39, and cases cited therein) and because "magic words" are not required to allege a theory of recovery (*id.* at 39-40). Defendant fails to address any of Ms. Exby's caselaw or argument on this issue.

Rather, Defendant points to *Green v. JP Morgan Chase Bank Nat'l Ass'n*, 501 Fed Appx. 727, 733-34 (10th Cir. 2012), in which this Court affirmed a grant of summary judgment on the plaintiff's 42 U.S.C. § 1981 constructive discharge claim for failure to exhaust administrative remedies and lack of facts to raise a genuine issue for trial. (Appellee's Br. 19-20.) There, the plaintiff alleged in his charge: "By unfairly **disciplining** the Plaintiff the Defendant and its agents have violated 42 U.S.C. § 1981." *Green*, 501 Fed. Appx. at 733 (emphasis added). The Court in *Green* was not deciding a claim in which the plaintiff affirmatively alleged discharge; instead, the Court affirmed the grant of summary judgment because a claim of "unfair discipline" is in no way akin to constructive discharge. *Id.*

Here, it is undisputed Ms. Exby exhausted her administrative remedies and alleged in her complaint that Defendant discriminated against her under the ADA when she was discharged. (Aplt. App. Vol. I pp. 22-24, ¶¶ 5, 9, 15, 17.) She did not allege a claim based on a wholly different injury, as was the case in *Green*.

Also, Ms. Exby and Defendant devoted discovery to constructive discharge, and Defendant addressed it in its own Motion for Summary Judgment. (Aplt. App. Vol. I pp. 51-53; 90-91.). Ms. Exby included constructive discharge in the first pretrial conference order, stating "[s]he was compelled by her department head to

resign from her employment." (Aplt. App. Vol. I p. 147.) The Final Pretrial Order the District Court entered for the first trial included Ms. Exby's claim for discrimination resulting in constructive discharge. (Aplt. App. Vol. I p. 144-45.) Because constructive discharge was a part of the case, Defendant's May 18, 2015 Disputed Proposed Jury Instructions included that Ms. Exby was "not constructively discharged or did not resign her position" as an element of failure to accommodate (Aplt. App. Vol. I p. 176), and Defendant proffered an instruction on constructive discharge stating "Plaintiff, Laurie Exby-Stolley, claims that she was constructively discharged." (*id.* at p. 178). Similarly, both Ms. Exby's and Defendant's May 18, 2015 proposed verdict forms included constructive discharge. (Aplt. App. Vol. I p. 184; 188.)

In other words, in stark contrast to Defendant's undue burden affirmative defense, which it did not allege even through the final pretrial conference and order, constructive discharge was at issue and was litigated by both parties without objection and even included as part of the Final Pretrial Order in advance of the first scheduled trial. The District Court's conclusion that Ms. Exby failed to adequately allege constructive discharge is erroneous in the face of the undisputed facts and must be reversed.

Next, Defendant argues that Ms. Exby failed to demonstrate sufficient facts to establish working conditions so difficult that a reasonable person would feel compelled to resign, as required for a constructive discharge claim. (Appellee's Br. 20-23; citing *Jones v. Barnhart*, 349 F.3d 1260, 1270 (10th Cir. 2003).) Defendant cites a Fourth Circuit case, *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir. 1993), to argue that failing to accommodate does not itself rise to the level of intolerable working conditions sufficient to show constructive discharge. (Appellee's Br. 22-23.) The law in the Tenth Circuit appears to differ. *E.g., Smith v. Millennium Rail, Inc.*, 2017 U.S. Dist. LEXIS 37568, at *32-33 (D. Kan. March 15, 2017) (unpublished) (denying summary judgment on constructive discharge because jury could find employer's refusal to provide leave to accommodate disability and demand employee return to work immediately or resign was sufficient to show constructive discharge).

Regardless, the standard for a constructive discharge claim in the Fourth Circuit requires a showing of deliberate intent to force the employee to quit, which is not a required element in the Tenth Circuit. Compare *Johnson*, 991 F.2d at 131 with *Jones*, 349 F.3d at 1270 & *Lockheed Martin Corp. v. Administrative Review Board., U.S. Dept. of Labor*, 717 F.3d 1121, 1133 (10th Cir. 2013) (on constructive discharge "the employer's subjective intent . . . [is] irrelevant." (internal quotation

and citation omitted)). The *Johnson* court's analysis turned on the deliberateness element, which does not apply in the Tenth Circuit. *Johnson*, 991 F.2d at 131-32. Even then, the *Johnson* court noted that:

> We recognize that a complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge. And, of course, deliberateness can always be shown through direct evidence that an employer intended to force an employee from his or her job. However, in this case of partial or imperfect accommodation in the context of an employment relationship that was difficult for everyone involved, we do not think that the elements of a constructive discharge have been met.

*Id.* at 132. Here, the County did repeatedly and completely fail to accommodate Ms. Exby, and went even farther. The County placed Ms. Exby on light duty, cut her hours in half, and reduced her responsibilities even though Ms. Exby was able to do her regular job and just needed a little more time to do her inspections. (Aplt. App. Vol. II p. 482; Aplt. App. Vol. IV p. 914:2-12.) Defendant also hired an intern to effectively replace Ms. Exby. (Aplt. App. Vol. IV p. 919:15-920:7; Aplt. App. Vol. II p. 487.) And then Defendant pushed Ms. Exby to go out on disability, stating it as plain as that:  "why don't you just go out on disability?" (Aplt. App. Vol.IV 826:24-827:13, 919:5-14.)

But that failure to accommodate is not the only basis for her constructive discharge. After Defendant refused to make accommodations, Ms. Exby's

supervisor said: "**do you want to write your resignation letter or do you want me to?**" (Aplt. App. Vol. IV 929:2-5.)

This statement created in Ms. Exby's mind, and would create in the mind of any reasonable person, conditions that would compel resignation. Had Ms. Exby refused the order to resign, her continued employment clearly would have been short lived—in fact, perhaps only a few seconds longer. And as a consequence of that ephemeral continued employment, she would be forced to tell potential future employers with whom she interviewed that she had been fired, not that she resigned, complicating her future employment prospects. Moreover, by upsetting her superiors, she reasonably expected that they would be less cooperative if she were to seek long-term disability benefits or even unemployment benefits. Every reasonable person in this position would have felt just like Ms. Exby did—that she had no choice but to resign. This more than satisfies the standard for constructive discharge. *Jones*, 349 F.3d at 1270.

Yet Ms. Exby was prohibited from arguing constructive discharge at trial, leaving the jury unable to understand the context of Ms. Exby's email offering her resignation (Aplt. App. Vol. IV p. 930:21-932:4)—that it was an **involuntary** resignation, not voluntary. As a result, the jury found no adverse employment

action and returned a verdict against Ms. Exby on her failure to accommodate claim. (Aplt. App. Vol. II p. 462-63.)

To the extent Defendant argues that Ms. Exby failed to prove facts at trial to show this constructive discharge (Appellee's Br. 21), that is precisely the point of her appeal on this issue. The District Court wrongly precluded Ms. Exby from proving, or even mentioning, constructive discharge at trial. (Aplt. App. Vol. II p. 503:12-507:11; Aplt. App. Vol. V p. 1200:22-1202:10; Aplt. App. Vol. II p. 416.)

The District Court erred in precluding Ms. Exby from asserting her ADA discrimination resulting in constructive discharge theory at trial. But worse, the District Court erred by refusing to allow Ms. Exby to even address her constructive discharge as an adverse employment action in connection with her failure to accommodate claim—an element she should not have had to prove in the first place. In other words, the District Court erred by requiring Ms. Exby to prove something she did not have to prove, and compounded that error by precluding Ms. Exby from proving it.

### III.        CONCLUSION

Some trial court errors are truly harmless and some change the entire course of a case. Here, the District Court's errors acted like a multiplier, each one compounding and exacerbating the previous error. If the court had properly

instructed the jury that the discrimination in a failure to accommodate claim can be the failure to accommodate itself, perhaps the constructive discharge error becomes less harmful. If the court had permitted Plaintiff to assert she was constructively discharged, thus allowing her to show an adverse employment action, perhaps the court's error on the elements of a failure to accommodate claim would have been less harmful. If the court had even instructed the jury that one of the examples of an adverse employment action was a failure to accommodate, perhaps the other errors would have been less harmful. Instead, the court's errors made it impossible for Plaintiff to prove her case and precluded the jury from even considering whether a failure to accommodate is discriminatory, in contravention of the plain language of the ADA.

This Court must reverse and remand for a new trial with instructions to ensure that the District Court properly instructs the jury on the failure to accommodate claim, that a failure to accommodate claim does not require an additional demonstration of discrimination other than a failure to accommodate, that failure to accommodate is an example of an adverse employment action, that Plaintiff can not only use the words "constructive discharge," but can also seek relief under such theory, and that Defendant is either precluded from asserting

undue burden because it was waived or, at the very least, Defendant bears the burden of proof on that affirmative defense.

Respectfully submitted this 28th day of June, 2017.

DARLING MILLIGAN HOROWITZ PC

*/s/ Jason B. Wesoky*
Jason B. Wesoky
1331 17th Street, Suite 800
Denver, CO 80202
Phone:    (303) 623-9133
Fax:    (303) 623-9129
Email:    jwesoky@dmhlaw.net

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that: 1) all required privacy redactions have been made; 2) the ECF submission is an exact copy of any hard copies that were filed (if any); and 3) the digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Microsoft Security Essentials, Virus definition version 1.247.221.0, dated June 28, 2017, and according to the program are free from viruses. I further certify that the information on this form is true and correct to the best of my ability and belief formed after a reasonable inquiry.

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this Reply Brief of Appellant complies with the word limitation set forth in Rule 32(a)(7)(B)(i). According to the word-processing system used to prepare this brief, MSWord 2010, the word count for this brief, excluding the Corporate Disclosure Statement, the Table of Contents, the Table of Authorities, and the certificates of counsel (*See* Fed. R. App. P. 32(a)(7)(iii)) is 6,110.

*/s/ Jason B. Wesoky*
Jason B. Wesoky

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of June, 2017 a true and correct copy of the foregoing **REPLY BRIEF OF PLAINTIFF-APPELLANT** was filed with the Court and served via CM/ECF on the following:

> Alan Epstein
> Matthew J. Hegarty
> Thomas J. Lyons
> Mark S. Rater
> HALL & EVANS, L.L.C.
> 1001 17th Street, Suite 300
> Denver, CO 80202
> *Attorneys for Defendant-Appellee*

/s/ Kurt E. Krueger
Kurt E. Krueger, Paralegal