## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

LAURIE EXBY-STOLLEY,
      Plaintiff – Appellant,

v.

BOARD OF COUNTY
COMMISSIONERS, WELD
COUNTY, COLORADO,
      Defendant – Appellee.

Case No. 16-1412
(13-cv-01395-WYD-NYW)
(D. Colo.)

---

## PETITION FOR REHEARING EN BANC

---

Jason B. Wesoky
DARLING MILLIGAN PC
1331 17th Street, Suite 800
Denver, Colorado 80202
(303) 623-9133
jwesoky@darlingmilligan.com

**ATTORNEY FOR PLAINTIFF-
APPELLANT**

**Oral Argument is Not Permitted**

# TABLE OF CONTENTS

**PETITION FOR REHEARING EN BANC**..................................................1

**INTRODUCTION** ...........................................................................2

**ISSUE ON REHEARING**.................................................................3

**LEGAL ARGUMENT** ....................................................................3

**CONCLUSION** .............................................................................20

**CERTIFICATE OF COMPLIANCE**.............................................23

**CERTIFICATE OF DIGITAL SUBMISSION** ............................23

# TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES

**Cases**

*Allen v. Southcrest Hosp.*, 455 Fed. App'x. 827 n.2 (10th Cir. 2011) passim

*Bartee v. Michelin N. Am. Inc.*, 374 F.3d 906 (10th Cir. 2004) ......... passim

*Boudreau v. Bethesda Found. Of Neb.*, No.1:14-cv-03451-CMA-CBS, 2016 U.S. Dist. LEXIS, *9 (D. Colo. January 27, 2016) ........................11

*Callahan v. Commun. Graphics*, No.13-CV-816-TCK-FHM, 2014 U.S. Dist. LEXIS 172148, *3 n.2 (N.D. Okla. December 12, 2014) ...............11

*Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850 (10th Cir. 2003) .................19

*Dewitt v. Southwestern Bell*, 41 F. Supp. 3d 1012 (D. Kan. 2014) ...........11

*E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635 (7th Cir. 2010)................... 12, 13

*E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028 (10th Cir. 2011) . 1, 5, 6, 12

*E.E.O.C. v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127 (1st Cir. 2014) ..........14

*E.g. Farmer v. HCA Health Serv's of Virginia*, No.3:17-cv-342-MEH, 2017 U.S. Dist. LEXIS 204564, *12 n.2 (E.D. Va. December 12, 2017) .................................................................................................................14

*E.g. Lieu Tran v. Pflugerville Indep. Sch. Dist.*, No.A-13-CA-145 DAE, 2014 U.S. Dist. LEXIS 190580, *16 (W.D. Tex. May 23, 2014) ............14

*EEOC v. LHC Group, Inc.*, 773 F.3d 688 n.6 (5th Cir. 2014) ....................13

*Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78 (1st Cir. 2012) .................15

*Lanman v. Johnson County*, 393 F.3d 1151 (10th Cir. 2004)....................18

*McNeil v. Wells Fargo Bank, N.A.*, No.1:12-cv-02064-DME, 2013 U.S. Dist. LEXIS 173382, *25 (D. Colo. December 13, 2013) ........................11

*Neely v. PSEG Texas, Ltd Partnership*, 735 F. 3d 242 (5th Cir 2013) ....13

*Ness-Holyoak v. Wells Fargo Bank, Nat'l Assn.*, No.2;15-CV-544-DB, 2017 U.S. Dist. LEXIS 77512, *4 (D. Utah May 22, 2017) ...................11

*Nguyen v. City and Cnty. of Denver*, 286 F. Supp. 3d 1168 (D. Colo. 2017) ........................................................................................................10

*O'Malley v. Calumet GP, LLC*, No.13-cv-60-JED-PEC, 2014 U.S. Dist. LEXIS 95192, *10-11, n.2 (N.D. Okla. July 14, 2014) ...........................11

*Pitman v. Am. Airlines, Inc.*, No.14-CV-0728-CVE-FHM, 2016 U.S. Dist. LEXIS 71876 *30 (N.D. Okla., June 2, 2016) .................................11

*Punt v. Kelly Servs. Inc.* 862 F.3d 1040 (10th Cir. 2017) ......................7, 10

*Rhodes v. FDIC,* 257 F.3d 373 n.11 (4th Cir. 2001)....................................14

*Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) ........................................................................................................6, 17

*Smith v. Midland Brake,* 180 F.3d 1154 (10th Cir. 1999) (en banc) passim

*Spielman v. Blue Cross,* 33 Fed. Appx. 439 (10th Cir. 2002) ....................12

*Wankier v. Crown Equip. Corp.*, 353 F.3d 862 (10th Cir. 2003)...............20

*Waters v. Rocky Mtn. Conf. of Seventh Adventists*, No.17-CV-0144-MSK-STV, 2018 U.S. Dist. LEXIS 121694 *5, 10-11 (D. Colo. July 20, 2018) ........................................................................................................10

*Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384 (6th Cir. 2017)...17

**Statutes**

42 U.S.C § 12101(a)(8) ...............................................................................19

42 U.S.C. § 12112(a)...............................................................................2, 18

42 U.S.C. § 12112(b)(5)(A) ........................................................................16

**Other Authorities**

*Eleventh Circuit Civil Pattern Jury Instructions* 4:12 ................................15

*Federal Jury Instructions of the Seventh Circuit* 4:03 ...............................15

*Pattern Jury Instructions (Civil Cases) Fifth Circuit* 11:10 .....................15

**Rules**

Fed. R. App. P. 35(b) ...........................................................................................1

## PETITION FOR REHEARING EN BANC

Plaintiff-Appellant Laurie Exby-Stolley ("Ms. Exby"), pursuant to Fed. R. App. P. 35(b), submits her Petition for Rehearing En Banc.

## STATEMENT OF REASONS FOR GRANTING PETITION

Judges Hartz and Kelly, in a 2-1 opinion (Judge Holmes dissenting), held an employer does not violate the Americans With Disability Act ("ADA") when it fails to accommodate the employee, unless the employee also proves an adverse employment action separate and apart from the failure to accommodate.

The majority's decision conflicts with *Smith v. Midland Brake,* 180 F.3d 1154 (10th Cir. 1999) (*en banc*), *Bartee v. Michelin N. Am. Inc.*, 374 F.3d 906 (10th Cir. 2004), and *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028 (10th Cir. 2011). These cases identified the elements of a failure-to-accommodate claim and none included an adverse employment action separate and apart from the failure to accommodate. Consideration by the full court is necessary to secure and maintain uniformity of the Court's decisions.

In addition, this case presents a question of exceptional importance in ADA cases, because the 2-1 decision altered the prima facie elements

in a failure-to-accommodate claim. None is required because the failure to accommodate itself satisfies any requirement to show adverse employment action.

## INTRODUCTION

Under the majority's holding, an employer can refuse to accommodate a disabled person, so long as the employer does not fire or demote the employee. The majority's opinion runs counter to this Court's prior decisions that found an adverse employment action is not a necessary element of a failure-to-accommodate claim, and the opinion eviscerates the ADA's express mandate that an employer must attempt to accommodate disabilities where reasonably possible.

The majority found failure-to-accommodate claims require proof of an adverse employment action because the ADA prohibits discrimination "in regard to" the "terms, conditions, and privileges of employment." Maj. Op. p.13 (quoting 42 U.S.C. § 12112(a)). Judge Holmes noted the majority's opinion was "misguided and troubling" and "strain[ed] mightily" "to incorporate an adverse-employment-action requirement into an ADA failure-to accommodate claim." Dissent pp.2, 4-5, 7 n.4.

The majority rewrote the ADA's plain language and 20 years of precedent to hold a failure-to-accommodate claim requires proof of an adverse employment action.

## ISSUE ON REHEARING

In a failure-to-accommodate claim, must the plaintiff prove both a failure to accommodate **and** an adverse employment action?

## LEGAL ARGUMENT

**I.    This Court's Precedent Mandates No Adverse Employment Action Need be Proved in a Failure-to-Accommodate Claim.**

The majority's "strained efforts", Dissent p.8 n.4, to require an adverse employment action in a failure-to-accommodate claim because the ADA says discrimination must be "in regard to [the] … terms, conditions, and privileges of employment," misapplies or ignores this Court's prior decisions. This Court, as the dissent convincingly demonstrates, consistently holds that an adverse employment action is not an element of a failure-to-accommodate claim.

In *Smith,* the *en banc* Court made clear that failure to reasonably accommodate violates the ADA: "The unvarnished obligation derived from the statute is this: an employer **discriminates** against a qualified

3

individual with a disability if the employer fails to offer a reasonable accommodation." 180 F.3d at 1169 (emphasis in original). *Smith* also listed five *prima facie* elements of a failure-to-accommodate claim (involving reassignment) with no reference to an adverse employment action. *Id.* at 1179.[1] Because *Smith* is an en banc opinion, it must control.

If a failure-to-accommodate case required an adverse employment action, "it defies logic that the *Smith* panel would not have included that requirement in its statement of the prima facie case." Dissent p.10. Since *Smith* excluded adverse employment action when discussing the elements of a failure-to-accommodate claim, failure-to-accommodate claims do not require an adverse employment action. *Id.* at 10-11 n.6.

Though *Smith* is a controlling *en banc* opinion, the majority dismisses it and, in so doing, "does violence" to *Smith*. 180 F.3d at 1164. *Smith* held "[t]he **only** statutory exception…to make reasonable accommodations…is if such accommodations would impose 'an undue hardship' on the employer." *Id.* at 1167 (emphasis added). But the majority here created another exception:   no accommodations are

---

[1] *Smith* is binding even though it was a review of a summary judgment motion. Judge Ebel's opinion stated what the employee would have to prove at trial – the same five elements. *See Smith,* 180 F.3d at 1179.

required if an employer does not impose an adverse employment action on top of the failure to accommodate. This Court rejected similar arguments in *Smith. Id.*

After *Smith,* Tenth Circuit panels consistently applied *Smith*'s holding that failure-to-accommodate claims do not require plaintiffs show a second, separate adverse employment action.

*Bartee* identified the different *prima facie* elements of wrongful termination and failure-to-accommodate claims. 374 F.3d at 912. While the first two elements were the same, the third elements differed: failure-to-accommodate claims required proof the employer did not take reasonable steps to accommodate, while wrongful termination claims required proof of termination because of disability. *Id.* at n.4. The court concluded verdicts in plaintiff's favor on failure-to-accommodate and against plaintiff on wrongful termination were consistent because they were distinct causes of action. *Id.* at 911-12.

During discussion of the failure-to-accommodate claim, the *C.R. England* panel did not mention adverse employment action. 644 F.3d at 1048-50.[2] Instead, the Court said the ADA "'establishes a cause of action

---

[2] Judge Kelly (part of the majority here) joined.

5

for disabled employees whose employers fail to reasonably accommodate them.'" *Id.* at 1048 (quoting *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001)). How can a cause of action be "established" unless all *prima facie* elements have been established?

When discussing failure-to-accommodate, *C.R. England* "uttered nary a word about an adverse-employment-action requirement." Dissent p.3.[3] And *C.R. England* did not leave an essential element out of its discussion of a failure-to-accommodate claim as the majority contends. *See* Maj. Op. pp.24-25. Instead, "[t]he *C.R. England* panel utterly disregarded an adverse-employment-action requirement…because it was irrelevant in applying the standards defining the unlawfulness of an employer's failure to provide a reasonable accommodation." Dissent p.3

At least two other panels have set forth the different elements of disparate treatment and failure-to-accommodate claims. *See Allen v. Southcrest Hosp.*, 455 Fed. App'x. 827, 830 n.2 (10th Cir. 2011) (disparate treatment claims required the disabled employee "was fired because of

---

[3] As the dissent points out, *C.R. England's* reference to an adverse employment action was 10 pages and several sections before the failure-to-accommodate analysis. And Judge Holmes knows what *C.R. England* intended since he wrote the opinion

her disability" while a failure-to-accommodate claim "must show…(3) the employer failed to reasonably accommodate the disability.")[4]; *Punt v. Kelly Servs. Inc.* 862 F.3d 1040, 1050 (10th Cir. 2017) (failure-to-accommodate claim plaintiff "must make an initial showing that…(3) she requested a plausibly reasonable accommodation.").[5] [6]

## II. The Majority's Effort to Evade This Circuit's Prior Decisions Fails.

This Circuit's prior decisions, including *Smith*'s binding precedent, establish that an adverse employment action is not an element of a failure-to-accommodate claim. Indeed, had any of the judges writing the opinions wished to graft an adverse employment action element on a failure-to-accommodate claim, they would have when they delineated the claim's elements. But that never happened. To get around this, the majority assumes the adverse employment action element was omitted

---

[4] Judge Kelly signed on to *Allen*.

[5] Judge Kelly signed on to *Punt*.

[6] Citing *Smith*, the *Punt* court held there is a modified *McDonnell Douglas* framework where the burden shifts to the employer to show undue hardship, but it never requires the employee to show adverse employment action. *Id.* at 1148.

in every one of the cases discussing the failure-to-accommodate elements because it is so obvious that an adverse employment action is required. *See* Maj. Op. pp.22-24.

The majority suggests "it may well have been that what we were doing is simply setting forth the failure-to-accommodate requirements ..., not **all** the elements of" a failure-to-accommodate claim. Maj. Op. p.23 (emphasis added).[7]  This is an odd way to read case law since it leaves the reader to guess what a court was not saying. But there is no need to "speculate about what we *could have* been doing in our prior, binding cases; their plain text tells us what we *were* doing." Dissent p.10 (emphasis in original).

Indeed, as Judge Holmes states, this Court should be:

> disinclined to conclude that the cadre of thoughtful federal judges who signed off on those circuit court decisions would cavalierly tolerate the risk that, by omitting an ostensibly essential element (i.e. an adverse-employment-action element) from their listings of the requisite elements of a failure-to-accommodate claim, they would mislead the public and lower courts regarding the state of the relevant ADA law.

---

[7] The majority also suggests a court's analysis can be ignored as dicta if a plaintiff was fired or could not prove they were disabled. *See* Maj. Op. pp.29-30. But this renders superfluous hundreds of pages of this Court's opinions.

Dissent p.8, fn.4. The better approach is "to presume that, when…circuit court panels omitted an adverse-employment action element from their listings of requisite elements of a failure-to accommodate claim they intended to do so." *Id.*

The majority's argument means that when a court enumerates the elements of a claim, it is not enumerating all of them. *See* Dissent p.11. But appellate courts simply do not leave out essential elements of a claim when "delineating the elements of a prima facie failure to accommodate claim." *Id.* If that were the case, this Court would constantly "be running the serious risk that the lower courts and the public, if not the parties, would be misled about the contours of the law." *Id.* at 11-12.

Lower courts and the public must trust that when the Court articulates the elements of a claim, it does so completely. Otherwise, what lurks unwritten? Must a plaintiff prove a failure-to-accommodate, she was fired because of her disability, **and** the employer is a Raiders fan?

## III.   Our District Courts Have Relied on and Correctly Understood *Smith, Bartee, Allen*, and Other Cases.

District courts in this circuit consistently rely on *Smith, Allen,* and *Bartee* to identify the *prima facie* elements for a failure-to-accommodate

claim, and they never mention an adverse employment action. In *Waters v. Rocky Mtn. Conf. of Seventh Adventists*, No.17-CV-0144-MSK-STV, 2018 U.S.Dist.LEXIS 121694 *5, 10-11 (D. Colo. July 20, 2018) (citing *Allen*), the plaintiff brought disparate treatment and failure-to-accommodate claims. To prove the former, plaintiff had to show she suffered an adverse employment action; to prove the latter, plaintiff had to show "the employer failed to reasonably accommodate the disability." *Id.*

In *Nguyen v. City and Cnty. of Denver*, 286 F. Supp. 3d 1168, 1180 (D. Colo. 2017), plaintiff brought disparate treatment (termination) and failure to accommodate claims. Citing *Punt*, Judge Babcock first noted, "[d]ifferent claims under the ADA require different types of evidence." *Id.* Then, citing *Punt, Smith*, and others, he identified the three elements for a failure-to-accommodate claim: the employee must show "(1)she is disabled; (2)she is 'otherwise qualified'; and (3)she requested a plausibly reasonable accommodation." *Id.* (quotation omitted). Relying on *Smith*, Judge Babcock held "failure to accommodate is *itself* discrimination." *Id.* at 1182. Thus, an employee "must only show that the employer refused

10

to provide reasonable accommodation to make out a prima facie case." *Id.* at 1180.[8]

But of all the district court cases that relied on this Court's precedent to articulate the elements of a failure-to-accommodate case without even a nod to an adverse employment element, the most instructive is *McNeil v. Wells Fargo Bank, N.A.*, No.1:12-cv-02064-DME, 2013 U.S.Dist.LEXIS 173382, *25 (D. Colo. December 13, 2013). There, Senior Circuit Judge Ebel (sitting by designation), who authored *Smith*, noted "there appears to be some minor disagreement in the Tenth Circuit over what exactly a plaintiff needs to show…to establish a prima facie

---

[8] *See also Ness-Holyoak v. Wells Fargo Bank, Nat'l Assn.*, No.2;15-CV-544-DB, 2017 U.S.Dist.LEXIS 77512, *4 (D. Utah May 22, 2017) (citing *Allen*); *Pitman v. Am. Airlines, Inc.*, No.14-CV-0728-CVE-FHM, 2016 U.S.Dist.LEXIS 71876 *30 (N.D. Okla., June 2, 2016) (citing *Allen*); *Boudreau v. Bethesda Found. Of Neb.*, No.1:14-cv-03451-CMA-CBS, 2016 U.S.Dist.LEXIS, *9 (D. Colo. January 27, 2016) (citing *Allen*); *Dewitt v. Southwestern Bell*, 41 F. Supp. 3d 1012, 1020 (D. Kan. 2014) (citing *Allen*); *Callahan v. Commun. Graphics*, No.13-CV-816-TCK-FHM, 2014 U.S.Dist.LEXIS 172148, *3 n.2 (N.D. Okla. December 12, 2014) (citing *Bartee* for proposition that failure to accommodate "is a separate theory of relief under the ADA with distinct elements from a wrongful termination claim"); *O'Malley v. Calumet GP, LLC*, No.13-cv-60-JED-PEC, 2014 U.S.Dist.LEXIS 95192, *10-11, n.2 (N.D. Okla. July 14, 2014) (relying on *Bartee* that failure-to-accommodate claim only required evidence employer failed to take reasonable steps to accommodate).

case of failure to accommodate." *Id.* Judge Ebel set out the elements articulated in *Allen*, *Bartee*, and *Spielman v. Blue Cross,* 33 Fed. Appx. 439, 443 (10th Cir. 2002). *Id.* at *25, fn.6. Judge Ebel tellingly does not mention adverse employment action. *Id*. The author of *Smith* did not include an adverse employment action in his articulation of the elements of failure-to-accommodate case, yet the majority did, casting aside years of precedent.

## IV. Other Circuits Conclude Adverse Employment Action is not an Element of a Failure-To-Accommodate Claim.

The panel majority not only attempts to evade *Smith*, *Bartee, C.R. England* and *Allen,* but it also tries to dismiss as dicta the holdings of myriad other circuits' opinions. *See* Maj. Op. pp.24-30.

*E.E.O.C. v. AutoZone, Inc*., 630 F.3d 635 (7th Cir. 2010), contrary to the majority's strained reading, explicitly recognized "that an adverse-employment-action requirement is a feature of an ADA disparate-treatment claim, *not* a failure-to-accommodate claim." Dissent p.7, n.4 (emphasis in original) (citing *AutoZone* 630 F.3d at 638 n.1). The majority does not substantively grapple with *AutoZone's* clear-cut holding.

Instead, the majority waives its hand at the Seventh Circuit's analysis by claiming the holding is dicta.

But when the Seventh Circuit issued its remand instructions, it emphasized that "no adverse employment action is required to prove a failure to accommodate" and "alert[ed] the trial court" so it could "avoid" requiring an adverse employment action in the failure-to-accommodate claim. *AutoZone* 630 F.3d at 638 n.1. This type of remand instruction cannot, by definition, be dicta.

The majority, at p.29, similarly dismisses *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 703, n.6 (5th Cir. 2014) as dictum. But the Fifth Circuit stated, "a failure-to-accommodate claim under the ADA is distinct from a disparate treatment claim" and "provides a mechanism to combat workplace discrimination even when the employee in question **has not** suffered adverse employment action." *Id.* (emphasis in original). *See also Neely v. PSEG Texas, Ltd Partnership*, 735 F. 3d 242, 247 (5th Cir 2013) (failure-to-accommodate elements are: (1) plaintiff is a qualified individual with disability; (2) disability and limitations were known by employer; and "(3) the employer failed to make reasonable accommodations for such known limitations.") Other cases in the Fifth

13

Circuit held "[i]n failure to accommodate cases, a plaintiff need not prove an adverse employment action." *E.g. Lieu Tran v. Pflugerville Indep. Sch. Dist.*, No.A-13-CA-145 DAE, 2014 U.S.Dist.LEXIS 190580, *16 (W.D. Tex. May 23, 2014).

The majority dismisses six other published circuit opinions. Maj. Op. p.30, n.7. In *Rhodes v. FDIC*, the plaintiff brought unlawful termination and failure-to-accommodate claims. 257 F.3d 373, 387 n.11 (4th Cir. 2001). The court stated the elements of each with no adverse employment action prong in the failure-to-accommodate claim. *Id.* The district courts followed. *E.g. Farmer v. HCA Health Serv's of Virginia*, No.3:17-cv-342-MEH, 2017 U.S.Dist.LEXIS 204564, *12 n.2 (E.D. Va. December 12, 2017) (elements of failure to hire, unlawful discharge, and failure-to-accommodate claims are distinct; failure-to accommodate elements did not include adverse employment action).

In *E.E.O.C. v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 131 (1st Cir. 2014), the failure-to-accommodate plaintiff had to demonstrate disability under the ADA, ability to perform essential functions with or without accommodation, and, the employer, "despite knowing of [her] disability,

14

did not reasonably accommodate it." *See also Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012).

These circuits, in addition to holding a failure-to-accommodate claim does not require adverse employment action, crafted pattern jury instructions which practically codify the matter. *See Pattern Jury Instructions (Civil Cases) Fifth Circuit* 11:10; *Federal Jury Instructions of the Seventh Circuit* 4:03; *Eleventh Circuit Civil Pattern Jury Instructions* 4:12. That these circuits exclude adverse employment action from their failure-to-accommodate jury instructions undermines the majority's assertion that other circuit decisions can be ignored as dicta or unsupported. *See* Maj. Op. pp.27-29.[9]

The "majority's strained efforts to convince…that most courts subscribe to its (errant) view" should not be accepted. Dissent pp.7-9, n.4. The majority ignores or dismisses myriad opinions from this circuit and others concluding an adverse employment action is not required in a

---

[9] The EEOC also recognizes adverse employment action is not an element of a failure-to-accommodate claim. *See* U.S. Equal. Emp. Opportunity Comm'n Enf't Guidance: REASONABLE ACCOMMODATION AND UNDUE HARDSHIP UNDER THE AMERICANS WITH DISABILITIES ACT (2002) *available at* https://www.eeoc.gov/policy/docs/accommodation.html. *See also* Dissent at p.6 n.3 (discussing EEOC guidance).

failure-to-accommodate claim. Tellingly, though, the majority cites exactly zero cases in support of its foundational premise that because discrimination must be "in regard to…conditions, and privileges of employment," a failure-to-accommodate plaintiff must prove an adverse employment action. There has never been a case, other than the majority opinion here, that read this ADA language to mean an adverse employment action is required in a failure-to-accommodate case.

## V.    The ADA's Text and Purpose Show Adverse Employment Action is not an Element of a Failure-to-Accommodate Claim.

The ADA protects disabled employees when employers fail to accommodate, retaliate, or engage in disparate treatment. All claims under the ADA require proof of discrimination. In a failure-to-accommodate claim, the discrimination is the failure to accommodate. This is apparent in the ADA's plain language and its purpose.

The ADA's definition of discrimination includes "not making reasonable accommodations." 42 U.S.C. § 12112(b)(5)(A). Thus, failing to accommodate completes the discrimination–it is the discriminatory act. Proof of that act requires only that the employer failed to accommodate, not that it also subjected the plaintiff to another adverse employment

action, because failing to accommodate is not advantageous to a disabled employee; it is a disadvantage. Thus, the law "establishes a cause of action for disabled employees whose employers fail to reasonably accommodate them." *Selenke*, 248 F.3d at 1261. *See also Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017) (failure to accommodate is discrimination under the ADA.); *Smith* 180 F.3d at 1178 n.12 ("failure to offer a reasonable accommodation…*is* unlawful discrimination").

In disparate treatment cases, there is no way to determine whether the disabled employee was discriminated against–treated differently because of disability–unless she suffered an adverse employment action. Thus, the adverse action is the act of discrimination.

In failure-to-accommodate claims, because the law defines failure to accommodate as discrimination, it follows that a second act of discrimination–adverse employment action–is superfluous. Otherwise, an employer could deny reasonable accommodations so long as the employer did not terminate or demote the employee.

The majority concludes because discrimination, including a failure-to-accommodate, must be with regard to "terms, conditions and privileges

of employment," that language means failure-to-accommodate plaintiffs must prove an adverse employment action. This reading makes no sense.

The ADA's provision (42 U.S.C. § 12112(a)) that no employer covered by the Act "shall discriminate…in regard to…terms, conditions, and privileges of employment" was borrowed by Congress from Title VII. *See Lanman v. Johnson County,* 393 F.3d 1151, 1155 (10th Cir. 2004). It makes sense ADA cases then borrowed the adverse employment action requirement from Title VII to prove disparate treatment claims. But there was no Title VII analogue for discrimination created by a failure-to-accommodate. This is because failure-to-accommodate is a distinct form of discrimination, created for the ADA, unique to disabled individuals, and not applicable to race, gender, etc. discrimination. Failing to reasonably accommodate is different from disparate treatment, and, by definition, is discrimination **in regard to** the conditions of employment. What is the accommodation for? The conditions of employment.

The ADA's purpose further proves the point. In enacting the ADA, "Congress prohibited a broad, comprehensive concept of discrimination, beyond discrimination motivated by a hostile discriminatory purpose."

*Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850, 858 (10th Cir. 2003). The discrimination prohibited included an employer's failure to accommodate, which kept disabled persons from equal opportunity and full participation in the work force. *See* 42 U.S.C § 12101(a)(8) (ADA ensures "equality of opportunity, full participation, independent living, and economic self-sufficiency").

An employer cannot refuse to accommodate disabled employees and hope they will suffer and endure, or, more likely, quit. That is not how the ADA is written. It requires the employer to try and reasonably accommodate regardless whether the employee also suffers an adverse employment action; otherwise, the ADA's purpose is eviscerated because employers cannot be held accountable for refusing to accommodate.

## VI.   The District Court's Error was not Harmless.

For her failure-to-accommodate claim, the District Court required Ms. Exby prove she: 1) was disabled under the ADA; 2) was a qualified individual with a disability; 3) suffered an adverse employment action such as termination; and 4) her disability was a substantial or motivating factor in the adverse employment action. *See* Maj. Op. p.8, fn.1. The jury found Ms. Exby was disabled and a qualified individual but did not find

she suffered an adverse employment action.[10] *Id.* at p.7. Thus, the erroneous instruction affected, and was the pivotal point, in the jury's verdict.

"Where…the district court has given a legally erroneous jury instruction, the judgment must be reversed if the jury might have based its verdict on the erroneously given instruction." *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 867 (10th Cir. 2003). Here, the "might have" standard is easily met. The jury found Ms. Exby failed to prove she was "discharged from employment," "not promoted," or suffered "other adverse action." Maj. Op. pp.7-8. It "strains credulity to claim that the jury definitely did not base its verdict on the faulty instruction regarding an adverse employment action, when the lack of such an action was the very reason the jury decided in favor of the County." Dissent p.1, fn.1.

## CONCLUSION

It is common sense that accommodations are requested at the place of employment and the failure to provide an accommodation negatively impacts the "terms and conditions of employment." If a disabled employee

---

[10] The majority ignored the District Court's refusal to include failure to accommodate in the definition of "adverse employment action."

cannot sit for long periods of time but the employer refuses to reasonably accommodate by buying a standing desk, the employer discriminates against the disabled employee "in regard to" the "conditions of employment." The inability to sit (or the need to stand) is a condition of employment. Thus, failing to accommodate axiomatically involves a condition of employment. How could a failure to accommodate not involve a condition of employment? The only reason for an accommodation is to adjust a condition of employment. But, under the majority's opinion, the disabled employee who requests and is denied a stand-up desk has no claim unless he becomes so miserable he quits or gets fired because he cannot do his work without the stand-up desk.[11] This gross misapplication of the ADA must be corrected.

Respectfully submitted October 25, 2018.

---

[11] Under the majority's holding, though, an employee claiming constructive discharge may not have a claim because the employer merely failing to accommodate may not be enough to show the employee reasonably had no choice but to quit.

DARLING MILLIGAN PC

*/s/ Jason B. Wesoky*
Jason B. Wesoky
1331 17th Street, Suite 800
Denver, CO 80202
Phone:       (303) 623-9133
Fax:          (303) 623-9129
Email:       jwesoky@darlingmilligan.com

**ATTORNEY FOR PETITIONER**

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this Petition for Rehearing En Banc complies with the word limitation set forth in F.R.A.P 35(b)(2)(A). According to the word-processing system used to prepare this brief, MSWord 2010, the word count for this brief, excluding the Table of Contents, the Table of Authorities, and the certificates of counsel (*See* Fed. R. App. P. 35(b) (2)) is 3,893.

The undersigned counsel certifies that this Petition for Rehearing En Banc complies with 10th Cir. R. 25.5 and all privacy redactions required have been made.

The undersigned counsel certifies that paper copies submitted are or will be exact copies of the electronic version and that attached to each paper copy is a copy of the opinion that is the subject of this petition.

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that: 1) all required privacy redactions have been made; 2) the ECF submission is an exact copy of any hard copies that were filed (if any); and 3) the digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Windows Defender Security Center, Virus definition version 10.0.17134.1, dated October 25, 2018, and according to the program are free from viruses. I further certify that the information on this form is true and correct to the best of my ability and belief formed after a reasonable inquiry.

*/s/ Jason B. Wesoky*
Jason B. Wesoky

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 25th day of October, 2018, a true and correct copy of the **PETITION FOR REHEARING EN BANC** was filed with the Court via CM/ECF and served upon the following parties as indicated:

<u>Counsel for Defendant-Appellee</u>: via CM/ECF
Alan Epstein
Matthew J. Hegarty
Thomas J. Lyons
Mark S. Rater
HALL & EVANS, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202

*/s/ Kurt E. Krueger*
Kurt E. Krueger, Paralegal